STEFANAC v CRANBROOK EDUCATIONAL COMMUNITY
(AFTER REMAND)

Docket No. 82317. Argued March 8, 1989 (Calendar No. 7). Decided
    July 5, 1990.

Judith Stefanac brought an action in the Oakland Circuit Court
    against Cranbrook Educational Community, alleging wrongful
    discharge, sex discrimination, and termination of employment
    in violation of public policy. The court, Robert C. Anderson, J.,
    relying on *Leahan v Stroh Brewery Co*, 420 Mich 108 (1984),
    granted the defendant's motion for accelerated judgment be-
    cause plaintiff failed to tender consideration, and therefore the
    release executed by the plaintiff barred her claims. Thereafter,
    the plaintiff, on rehearing, sought the court's consent to tender
    the disputed consideration and refile her suit. The court af-
    firmed its previous ruling, dismissing the complaint with preju-
    dice. The Court of Appeals, BEASLEY and C. L. HORN, JJ.
    (BRONSON, P.J., not participating), affirmed in an unpublished
    opinion per curiam (Docket No. 89512). The Supreme Court
    vacated the judgment of the Court of Appeals and remanded
    the case for consideration of plaintiff's alternate argument
    whether her offer to tender the disputed consideration was
    made within a reasonable time. 428 Mich 903 (1987). On
    remand, the Court of Appeals, BEASLEY, P.J., and MICHAEL J.
    KELLY and MAHER, JJ., held that the offer to tender the
    disputed consideration had been made within a reasonable time
    and instructed the trial court to issue an order allowing the
    plaintiff thirty days to make restitution (Docket No. 101319).
    The defendant appeals.

In an opinion by Justice BRICKLEY, joined by Chief Justice
    RILEY and Justices CAVANAGH, BOYLE, and GRIFFIN, the Su-
    preme Court *held*:

Where a plaintiff has entered into a settlement agreement,
    tender of consideration recited in the agreement must occur

REFERENCES

Am Jur 2d, Compromise and Settlement §§ 7, 8, 13.

Timeliness of tender or offer of return of consideration for release
    or compromise, required as condition of setting it aside. 53
    ALR2d 757.

not only within a reasonable time after execution of the agreement, but, in all cases, prior to or simultaneously with the commencement of any proceeding raising a legal claim in contravention of the agreement.

1. Settlement agreements are binding until rescinded for cause. Tender of consideration received is a condition precedent to the right to repudiate a contract of settlement. The law favors settlements, and a party entering into a settlement agreement, offering adequate consideration, is entitled to rely on the terms of the agreement. A compromise and release should not be confused with the law of contract. The very essence of a release is to avoid litigation, even at the expense of strict right. One who seeks to repudiate or avoid a compromise settlement or release and revert to the original right of action must place the other party in statu quo, absent waiver or fraud in the execution. In this case, the plaintiff's allegations of fraud are insufficient to bring the claim within the exception, and the defendant has not waived the obligation to tender. The plaintiff made no effort to raise the validity of the release; rather, she merely ignored the existence and terms of the agreement and brought an action in contravention of it, while retaining its benefits.

2. A plaintiff must tender restitution promptly and without unreasonable delay upon discovery of fraud or be held to have ratified the release. Long acquiescence and failure to complain promptly operates, as a matter of law, to reaffirm a contract of settlement and bars litigation. A settlement agreement is binding until rescission by repudiation and tender. Tender is a prerequisite to the right to repudiate. Commencement of a lawsuit is not a proper means to repudiate a settlement. Tender must occur within a reasonable time after learning of the grounds upon which the release and settlement could be repudiated. What is reasonable under the circumstances is a matter of discretion for the trial court. In this case, the trial court had no occasion to rule on the issue because, instead of repudiating the agreement, the plaintiff filed suit in contravention of the terms of the release.

3. Independent of the issue what constitutes a reasonable time within which to repudiate a settlement is the question whether tender is permissible after commencement of an action in contravention of the agreement. As a matter of law, in all cases where a legal claim is raised in contravention of an agreement, the plaintiff must tender the consideration recited in the agreement prior to or simultaneously with filing suit. A defendant is entitled to rely on the binding nature of an

agreement. A plaintiff is not entitled to retain the benefit of an agreement and at the same time bring suit in contravention of the agreement.

Reversed.

Justice LEVIN, dissenting, stated that where a plaintiff claims, and the court finds, that there would be entitlement to retain recited consideration after a release is set aside because the amount recited as consideration represents payment that accrued and was owing to the plaintiff separate and apart from the claims that were settled by the release, and that no consideration in fact was paid to settle those claims, tender is not required. In deciding whether tender is required before suit in this case the Supreme Court is obliged to accept as true the allegations in the plaintiff's complaint and in her response to the motion for summary disposition, and to proceed on the assumptions, absent judicial determination at the trial level to the contrary, both that the release in fact was obtained by fraud or duress and that the defendant indeed owes the plaintiff two weeks' vacation pay and thus an amount equal to the consideration recited in the release. In addition, it exalts form over substance to require tender before suit where it is apparent that the defendant would not have accepted the tender had it been promptly offered.

A person who has signed a release should not be permitted to proceed in an action in disaffirmance of the release until the consideration actually paid for the release itself has been returned. The purpose of the tender rule is not to provide a fair and necessary check against the instability of contracts, but rather to provide a check against the unjust enrichment of the rescinding party that would result if the rescinding party were allowed to retain the benefits of the contract attacked. The factual dispute in an action to set aside a release does not involve the merits of the plaintiff's underlying claim against the defendant that were resolved by the release if it is valid. It is only if and when the release is set aside that the plaintiff should be able to put the defendant to the expense of defending against the underlying claim.

The consideration paid by the defendant to the plaintiff at the time the release is signed does not provide protection against a claim that the release itself was procured by fraud or duress, or protect the very instrument that is intended to ensure forbearance of litigation. If it is judicially determined in this case that the plaintiff was coerced into signing the release, the release should be set aside and she should be required to return the payment before obtaining a determination on the

merits of her claims of wrongful discharge unless it is also so judicially determined that the defendant owes her that amount as additional vacation pay.

The majority's reading of *Leahan* is incorrect and contradicts a well-established tenet of the law of contracts. Parol evidence is always admissible to show that a statement in a document is not true.

Tender of consideration, although a precondition to an action at law, is not a precondition to commencement of an action seeking equitable relief. The majority errs in concluding that the abolition of the procedural distinction between law and equity in some way diminishes the power of a court to order rescission in accordance with the rules and practices developed in equity. Modern procedural reforms, in conjunction with the consolidation in one court of jurisdiction of both equitable and legal claims, eliminate the necessity of tender as a prerequisite to commencement of an action seeking to obtain rescission. Under unified proceedings, a court may enter a judgment conditioning rescission on the return of consideration received by the plaintiff, thus effectuating the purpose of the tender rule, the avoidance of unjust enrichment of the residing party. Contracts to relinquish the enforcement of legal rights warrant at least as much judicial surveillance as other contracts.

Justice ARCHER, dissenting, stated that an inflexible application in this case of the rule of *Leahan* that a party to a contract of settlement must tender any consideration received as a condition precedent to repudiating the contract is neither complete nor fair. Where there is a bona fide, good-faith dispute regarding whether consideration recited in a release agreement actually amounted to consideration, the rule of *Leahan* is unworkable.

Where, aside from the transaction, the person seeking restitution would be entitled to retain what the other gave as a result of the agreement, there is no enrichment as a result of the agreement even though what was given is retained, nor does it diminish the net assets of the other. Clearly, a plaintiff who contests the sufficiency of the consideration supporting a release agreement should be allowed to withhold tender of the alleged consideration until there is a judicial determination that consideration was in fact paid. If it is found that the consideration was paid, the plaintiff should be required to tender that amount. However, if the court determines that the amount paid to the plaintiff for the release was already owed to the plaintiff, the plaintiff should be allowed to retain that amount and proceed with any legal action.

In this case, the plaintiff unquestionably was owed her wages

and accrued vacation pay. A question of fact exists regarding whether additional vacation pay was owed, and any amount determined to be in excess of that owed the plaintiff should be tendered to the defendant within a reasonable time following resolution. However, the plaintiff should be allowed to amend her complaint to request rescission.

164 Mich App 709; 417 NW2d 582 (1987) reversed.

COMPROMISE AND SETTLEMENT — RELEASE — CONSIDERATION — TENDER — REASONABLE TIME.

Where a plaintiff has entered into a settlement agreement, tender of consideration recited in the agreement must occur not only within a reasonable time after execution of the agreement, but, in all cases, prior to or simultaneously with the commencement of any proceeding raising a legal claim in contravention of the agreement.

*Bell & Gardner, P.C.* (by *Mary E. Rosick* and *Cynthia Yott*), for the plaintiff.

*Dickinson, Wright, Moon, Van Dusen & Freeman* (by *John Corbett O'Meara, Thomas G. Kienbaum,* and *Elizabeth Hardy*) for the defendant.

### AFTER REMAND

BRICKLEY, J. The issues presented in this case are whether a plaintiff, before commencing a suit which disregards the terms of a release, must tender the consideration recited in the release and, if so, at what point before or during the proceedings must this tender take place. We hold that when a plaintiff has entered into a settlement agreement tender of consideration recited in the agreement must occur not only within a reasonable time after execution of the agreement, but in all cases prior to or simultaneously with the commencement of any proceeding raising a legal claim in contravention of the agreement.

I

On November 16, 1983, plaintiff resigned as

personnel director of Cranbrook Educational Community. In connection with her termination, plaintiff signed a document entitled "Release of Claims." The release is dated November 16, 1983, and reads in pertinent part as follows:

> For and in consideration of Cranbrook Educational Community's (Cranbrook) acceptance of the voluntary resignation of Judith Stefanac (Stefanac) and Cranbrook's further agreement to pay Stefanac for two weeks, less applicable state and federal withholding taxes, Stefanac, for herself, her heirs, administrators and executors, does hereby fully and forever release, acquit and discharge Cranbrook, its agents, servants and representatives, of and from any and all claims, demands, actions and causes of action of every kind, nature and description which Stefanac may have had, may now have or may hereafter have by reason of any matter, cause, act or omission arising out of or in connection with Stefanac's employment with and/or resignation from Cranbrook.

After signing the release plaintiff received a check from defendant for $2,090.65. The check was purportedly intended to be payment for four weeks accrued vacation time and two weeks' severance pay.[1]

Plaintiff filed suit against Cranbrook on August 9, 1984, alleging wrongful discharge, sex discrimination, and termination in violation of public policy. Subsequently, defendant filed a motion for accelerated judgment, arguing that the release barred plaintiff's claims.[2] In response, plaintiff filed an affidavit challenging the validity

---

[1] The plaintiff had also received separate checks for refunded retirement contributions and travel expenses.

[2] Defendant's motion was filed on September 4, 1984. Thereafter, defendant raised the release as an affirmative defense in its answer filed on October 16, 1984.

of the release. The parties agreed that plaintiff's affidavit raised a question of fact, and therefore the motion was denied without prejudice.

Following a discovery period of one year, defendant again moved for dismissal of the action on the grounds that the release barred suit. Defendant also argued at this point, that plaintiff's failure to tender the consideration received in exchange for the release prevented her from now attempting to rescind the agreement. Defendant's position was based on this Court's decision in *Leahan v Stroh Brewery Co,* 420 Mich 108; 359 NW2d 524 (1984).[3] Plaintiff conceded that *Leahan* merely reaffirmed the law as it had existed in the past, but asserted that the facts of *Leahan* differed from the instant case. Further, plaintiff maintained that the release was void for lack of consideration and that she was entitled to all money received as a result of her termination.[4] The trial court interpreted *Leahan* as dispositive of the issue and granted defendant's motion.[5]

Three weeks later, plaintiff filed a motion for rehearing. On rehearing, plaintiff sought the trial

[3] We decided *Leahan* three months after defendant's original motion.

[4] Plaintiff received a check which was the equivalent of six weeks' salary. The check was itemized by defendant to be four weeks of accrued vacation pay and two weeks' severance pay. Plaintiff claims that at her dismissal she had accrued six weeks of vacation time and therefore the check did not include any consideration in exchange for the release agreement. Rather, the money received was for six weeks' vacation pay to which plaintiff was entitled. Defendant contends that the policies of the institution prohibit an employee from accruing more than four weeks of vacation time.

[5] We are not persuaded by plaintiff's argument that defendant had the burden of raising the tender issue at the time of the first motion. It is sufficient that defendant raised the release as a defense. See MCR 2.116(C)(7). This is especially significant in light of the fact that *Leahan* was not decided until three months after the ruling on defendant's first motion. Further, when defendant did specifically raise as a defense plaintiff's failure to tender the recited consideration, plaintiff still refused to tender any money received.

court's consent to tender the disputed considera-
tion and, following tender of the money, the oppor-
tunity to refile her suit against defendant. This is
the first indication that plaintiff was willing to
repay the consideration recited in the release. The
trial judge affirmed the previous ruling, dismissing
plaintiff's complaint with prejudice.

Plaintiff appealed as of right, raising two issues.
Plaintiff continued to argue that she was entitled
to all the money received and therefore that ten-
der was not required in order to maintain the
action. Alternatively, plaintiff argued that her
offer to tender back the disputed consideration was
within a reasonable time under the circumstances
of the case. Basing its analysis on an examination
of *Leahan,* the Court of Appeals held:

> [T]he consequence of the *Leahan* decision is that
> if a release recites that consideration was paid and
> *if money was in fact paid,* a plaintiff may not
> argue that the money was not actually considera-
> tion, regardless of any evidence to that effect. That
> seems to be what *Leahan* holds. If not, we believe
> it is up to the Supreme Court to say so. Conse-
> quently, we affirm.[6] [Emphasis added.]

However, the Court of Appeals did not directly
address plaintiff's alternate argument that tender
of the disputed consideration occurred within a
reasonable time. Consequently, we issued an order
vacating the judgment of the Court of Appeals and
remanded the case for consideration of the second
issue raised by plaintiff. 428 Mich 903 (1987).

On remand, the Court of Appeals ruled that
"plaintiff's offer to tender back the disputed con-

---

[6] *Stefanac v Cranbrook Educational Community,* unpublished opin-
ion per curiam of the Court of Appeals, decided January 27, 1987
(Docket No. 89512).

sideration was within a reasonable time."[7] The Court instructed the trial judge to issue an order which would allow plaintiff thirty days to make restitution to the defendant. Further, the trial court held:

> If such restitution is made, trial shall be had on the merits, including determination of the validity of the release. If such restitution is not made, judgment may enter for defendant.
>
> Nothing in this opinion is intended to preclude the trial judge from making appropriate findings of fact after trial, including resolution of how much, if any, of the monies paid plaintiff were in consideration of the release.[8]

We granted defendant's application for leave to appeal. 430 Mich 892 (1988).

II

It is a well-settled principle of Michigan law that settlement agreements are binding until rescinded for cause. Further, tender of consideration received is a condition precedent to the right to repudiate a contract of settlement. See, generally, *Randall v Port Huron, St C & M C R Co,* 215 Mich 413; 184 NW 435 (1921); *Kirl v Zinner,* 274 Mich 331; 264 NW 391 (1936); *Leahan v Stroh Brewery Co, supra.* The policy consideration underlying the general rule is that the law favors settlements. A party entering into a settlement agreement, offering adequate consideration, is entitled to rely on the terms of the agreement. The rationale for the rule was explained further by this Court in *Kirl v Zinner:*

---

[7] *Stefanac v Cranbrook Educational Community (On Remand),* 164 Mich App 709, 716; 417 NW2d 582 (1987).

[8] *Id.*

A compromise and release is not to be confused with the law of contract, in which equivalents are exchanged, for the very essence of a release is to avoid litigation, even at the expense of strict right.

*  *  *

It is a general and salutary rule that one repudiating or seeking to avoid a compromise settlement or release, and thereby revert to the original right of action, must place the other party *in statu quo,* otherwise the very fact of payment, in consideration of the compromise or release, will likely operate as a confession of liability. [274 Mich 334-335. Emphasis in original.]

Plaintiff asserts that she should be excepted from this rule because the release was void and not merely voidable. The validity of the release was challenged by plaintiff on the grounds that it lacked consideration and was procured under duress and fraud. Specifically plaintiff asserts that defendant misrepresented the terms of the agreement. Moreover she asserts that defendant knew that plaintiff was legally entitled to the money she received, that she needed the money to support her family, and that defendant waved the checks at her refusing to give plaintiff any funds unless she signed the release.

Plaintiff contends that although the release recites that consideration was received, she in fact did not get anything in exchange for signing the settlement agreement. Therefore tender was not necessary prior to filing suit because "there is nothing to be returned to restore the status quo ante." However, plaintiff admits that she signed the release and that she received four checks. Subsequently she endorsed and cashed the checks received.

We start with the presumption that the plaintiff

executed the release knowingly[9] and that the re-cited consideration was received.[10] *Porth v Cadillac Motor Car Co,* 198 Mich 501; 165 NW 698 (1917). *Kirl v Zinner, supra.* The plaintiff has the burden of showing, by a preponderance of the evidence, that the release is unfair or incorrect on its face. *Id.* Even in light of these presumptions and the plaintiff's burden, the plaintiff must tender the recited consideration before there is a right to repudiate the release. *Id.* The only recognized exceptions in Michigan are a waiver of the plaintiff's duty by the defendant[11] and fraud in the execution.[12] Plaintiff has not raised either exception and thus is not relieved of the duty to tender the consideration recited in the release.

Our reports are replete with authority that ne-gate plaintiff's contentions. In *Niederhauser v Detroit Citizens' St R Co,* 131 Mich 550, 552; 91 NW 1028 (1902), we held:

> The law is well settled that, if one seeks to rescind a settlement on the ground of fraud or mistake, he must, after discovering the fraud, place the other party *in statu quo.*

In *Randall, supra* at 420, Justice STONE wrote:

---

[9]   *Q.* [W]hen you signed [the release] were you mindful of what it contained?
   *A.* Yes, I had read it. I could comprehend what it said.

[10]   *Q.* But you acknowledge you did receive something addition-ally, namely the severance pay that you otherwise would not have received?
   *A.* Not received in terms of pay?
   *Q.* Yes.
   *A.* That's right.

[11] *Slater v United States Health & Accident Ins Co,* 133 Mich 347; 95 NW 89 (1903).

[12] *Randall v Port Huron, St C & M C R Co,* 215 Mich 413; 184 NW 435 (1921); *Stewart v Eldred,* 349 Mich 28; 84 NW2d 496 (1957).

"While there is still some real conflict in the cases as to whether or not there has to be a tender of the amount received when it is sought to set a release aside on the ground of fraud, by the weight of authority the cases divide themselves into two classes, first, where the fraud goes to inducing the injured party to sign a release, the effect of which he understands. And, second, where that fraud is in inducing him to sign a release under the belief that he was signing something else. I am satisfied that Michigan has recognized this distinction and has held, in the cases already cited, that where the fraud goes to inducing the injured party to sign a release, tender of the amount received has to be made within a reasonable length of time after discovery of the fraud. In other words, if a party claims that he was induced, through fraud, to enter into the contract, in order to rescind that contract, he must put the parties *in statu quo.* That is, he must return the money that he received, and ask to have the contract or agreement or release set aside on the ground that he entered into it through fraud."

Similarly in *Kirl v Zinner, supra* at 335, we said:

"Where a party to a compromise desires to set aside or avoid the same and to be remitted to his original rights, he must place the other party *in statu quo* by returning or tendering the return of whatever has been received by him under such compromise, in case it is of any value, and so far as possible any right lost by the other party because thereof. This rule obtains even though the contract was induced by the fraud or false representations of the other party, or was obtained under duress, or was made under a mistake of fact or as to the law; and until this is done the settlement will constitute a good defense. By electing to retain the property, a party must be held to be bound by the settlement. The rule applies to actions *ex contractu* as well as *ex delicto.*" 12 CJ, p 355, § 57.

Our most recent pronouncement in this area is *Leahan v Stroh Brewery Co, supra,* which is in accord with this case and supports our holding. In *Leahan,* we upheld the lower court's rejection of plaintiff's challenge of a release executed in connection with his resignation from Stroh Brewery Company. Mr. Leahan filed a complaint against the defendant, alleging age discrimination and breach of employment contract. The defendant raised as a defense the language in the plaintiff's resignation letter which released the defendant of further liability. In response, the plaintiff claimed that the release was voidable because of duress and lack of consideration. As in this case, Mr. Leahan did not claim that he did not receive anything in exchange for the release. Rather, he claimed that the money he received was not consideration, but instead was representative of some other benefit that he was entitled to under the agreement. Our holding in *Leahan* reflects our position in this case that the consideration recited in the release must be tendered before the plaintiff can maintain an action for claims arising out of the settlement agreement.

Plaintiff's allegations of fraud are insufficient to bring her claim within the fraud in the execution exception. Plaintiff admits that she read and executed the release agreement. She was the personnel director of the institution and, in fact, had dealt with similar release agreements in other employment termination situations. Thus, we can impute to her full understanding of the terms and conditions of the agreement. Additionally, defendant has not at any time during the trial court proceedings waived plaintiff's obligation to tender the consideration recited in the release agreement. Finally, plaintiff's allegation that the release was void because it lacked consideration is directly

contrary to the express language of the release. Thus, plaintiff is not relieved of her duty to tender the consideration she received.

### III

The dissent raises the question whether tender is a precondition to an action in equity based on the rule announced by this Court in *Style v Greenslade,* 364 Mich 679, 683; 112 NW2d 92 (1961). In *Style* we held that "[i]f the release is upheld in the chancery proceeding, that should end the matter. If the release is held invalid, plaintiff may then proceed with her law action involving questions of negligence and damages." On this authority the dissent would remand the case allowing Stefanac to amend her complaint to seek cancellation of the release (*post,* p 210, LEVIN, J., dissenting) even though plaintiff has not requested such relief. Albeit it was at this Court's initiative in *Style, supra,* p 683, that the case be "remanded and further proceedings therein enjoined until plaintiff may bring and have determined an appropriate chancery action," we read *Style* not as authorizing a similar disposition in the instant case but as precedent that a plaintiff seeking to avoid a release may first seek equitable relief.[13]

However, the record shows no effort on the part of plaintiff in the instant case, at the time of bringing suit, to raise an issue as to the validity of the release executed in conjunction with her resignation. Rather, plaintiff merely ignored the existence and terms of the agreement and filed an action in contravention of the agreement, while at

---

[13] We assume that plaintiff was aware of the *Style* remedy. While it may have been suitable to guide the plaintiff in *Style* on her legal options when there was no clear precedent, we do not think it within our province to do so now. It is not the function of this Court to plead a plaintiff's case or exercise specific legal options for her.

the same time retaining the benefit derived from the agreement. Plaintiff did not challenge the validity of the release until after defendant had raised it as a defense barring plaintiff's action at law.

Conversely, defendant has continued to maintain that plaintiff's action is barred by the existence of the release executed by plaintiff.[14] Although defendant did not specifically raise nontender as a defense until more than one year had passed after the commencement of the action, we find it sufficient that defendant relied on the binding nature of the agreement as an affirmative defense to the action.[15]

Whether the tender rule announced today would preclude a plaintiff from bringing an action seeking solely equitable relief is beyond the scope of this Court's limited grant order and, given the facts of this case, such an analysis goes beyond what is necessary to resolve this dispute. Accordingly, we find it unnecessary to rule on the continued legitimacy of *Style* in view of the fact that the consolidation of the chancery court with courts of law[16] no longer requires that a plaintiff bring

[14] See n 2.

[15] The dissent credits us as being inspired by "generosity of spirit" in allowing defendant to plead nontender so late in the litigation. (*Post,* p 212, LEVIN, J., dissenting.) However, at the risk of rebuking the compliment, we must point out that defendant need not specifically raise the tender issue because until plaintiff tenders the consideration recited in the release, it is the existence of the release and its terms which prohibit the plaintiff from bringing suit. By pleading the release as a defense, defendant has complied with the requirements of MCR 2.111(F).

[16] The Michigan Constitution of 1850 states that "[t]he legislature shall, as far as practicable, abolish distinctions between law and equity proceedings." Const 1850, art 6, § 5. The same provision was repeated in the 1908 Constitution. Const 1908, art 7, § 5. The Legislature acted upon this directive by giving the Supreme Court the power to promulgate the rules as may be practical to improve the practice by "[t]he abolishing of distinctions between law and equity proceedings . . . ." 1857 CL 3390 approved April 4, 1851. See also

separate actions in equity and law. We make no further ruling on whether a plaintiff who, under *Style,* decides to file a separate equitable action, would later be precluded from bringing an action at law by the mandatory joinder rule,[17] or principles of res judicata and collateral estoppel. However, the tender rule set forth here requires that whenever a legal claim is raised in contravention of a settlement agreement, even if joined with an equitable claim, tender is a precondition. Anything less would nullify the purpose of the tender rule.

The dissent's alternative argument that there will be no unjust enrichment in allowing plaintiff to proceed with her actions as filed is equally without merit. The dissent asserts:

> [T]his Court should provide Stefanac an opportunity to prove her claim that she could not obtain amounts admittedly due her without signing the release, and that the two weeks' pay, recited as consideration in the release, was, as she asserts, owed as an additional two weeks' vacation pay. [*Post,* p 196, LEVIN, J., dissenting.]

However, the plaintiff's allegation that the money

1948 CL 601.14 repealed by 1961 PA 236, § 9901, effective January 1, 1963. Along with this statute, a separate statutory provision was enacted which vested distinct jurisdiction in courts at law and courts in equity, 1915 CL 12299, see also 1948 CL 606.1 *et seq.* It was not until 1963 that jurisdiction over both equitable and legal claims was vested solely in one circuit court. See MCL 600.601; MSA 27A.601; Const 1963, art 6, § 5.

[17] MCR 2.203(A)(1) states in pertinent part:

> In a pleading that states a claim against an opposing party, the pleader must join *every claim* that the pleader has against that opposing party at the time of serving the pleading, if it arises out of the transaction or occurrence that is the subject matter of the action . . . . [Emphasis added.]

Furthermore, GCR 1963, 203.1, upon which MCR 2.203(A)(1) was based, specified that a party must join every *equitable* and *legal* claim arising out of the same transaction or occurrence in one proceeding.

she received was money already owed her is merely a restatement of the claim that the release is invalid because it lacked consideration. Further, plaintiff's actions of endorsing the check clearly marked as representing "severance pay" are contrary to her assertions in this action. Absent an appropriate proceeding to determine the validity of the release, we do not find it necessary to extend our review beyond the writings offered in support of defendant's claims.

In this regard, the dissent draws an analogy to an accord and satisfaction. An accord is a contract whereby the obligee agrees to discharge a preëxisting duty in exchange for some substituted performance. (See 2 Restatement Contracts, 2d, § 281, pp 381-382). If any conclusion is to be drawn from such an analogy, it must be that plaintiff's actions amount to a satisfaction. By cashing the checks, plaintiff accepted defendant's substituted performance and discharged any further duty owed. (*Id.,* see also 1 Restatement Contracts, 2d, § 69[2], p 164).

Finally, the dissent contends that our reading of *Leahan* "contradict[s] a universal tenet of the law of contracts that the parol evidence rule does not prevent a showing that there has been nonpayment/failure of consideration" (*Post,* p 206, LEVIN, J., dissenting). Properly understood, the tender rule is not a rule of evidence but rather is a rule of procedure. We do not contest the dissent's enunciation of the principles encompassing the parol evidence rule. However, until plaintiff either challenges the validity of the release on equitable grounds or preserves the right to challenge or rescind the release by tendering the consideration recited in the release prior to or simultaneously with bringing suit, the parol evidence rule has no application. Parol evidence is admissible to explain

the terms of the contract and has application only
after the terms of the agreement have been chal-
lenged. We observe that plaintiff is not claiming
that she did not receive any money as a result of
executing the release agreement. We also note
that plaintiff is not merely asserting a claim for an
additional two weeks' pay.[18] Rather, plaintiff's
actions amount to an attempted rescission of the
agreement rather than an action whereby plaintiff
seeks to enforce the terms of the release.[19]

IV

Having set forth the general rule that a plaintiff
has a duty to tender the consideration recited in a
release, we turn next to the question of the period
of time during which the tender must take place.

There are a line of cases that have addressed the
question what is a reasonable time within which
plaintiff can repudiate and tender other than by
filing a lawsuit. The earliest case dealing with this
question is *Bertha v Regal Motor Car Co,* 180 Mich
51; 146 NW 389 (1914), in which the plaintiff
suffered an eye injury. Following medical treat-
ment he was informed that he would recover his
eyesight in approximately seven weeks. The plain-
tiff entered into a settlement agreement releasing
the defendant of all claims for damages resulting
from the injury. Subsequently, the plaintiff
learned that the doctors had misrepresented the
extent of his injury. "He immediately caused the

---

[18] As the dissent states "[t]he law does not permit an employer to
withhold the payment of wages and other amounts due an
employee . . . ." (*Post,* p 195, LEVIN, J., dissenting.) Accordingly,
plaintiff had other legal options available to her to receive payment
for the additional two weeks' vacation pay she now claims is due to
her.

[19] See, e.g., *Crawley v Studebaker Corp,* 183 Mich 462; 149 NW 1019
(1914), and *Porth v Cadillac Motor Co,* 198 Mich 501; 165 NW 698
(1917).

sum of $110, with interest, to be tendered back to defendant company. Through its president this tender was refused, and suit was at once instituted."[20] *Id.* at 54. The defendant pled the release as a defense, and the circuit court directed a verdict in its favor. The *Bertha* Court reversed the verdict in favor of the defendant, holding that the plaintiff had properly repudiated the settlement agreement and that the defendant's actions in refusing to accept tender and paying for the plaintiff's medical treatment amounted to an adoption and ratification of the doctors' misrepresentation of the extent of the plaintiff's injuries.

This Court relied on *Bertha* in *Burns v Reading Estate,* 188 Mich 591; 155 NW 479 (1915), holding that a plaintiff must tender restitution promptly and without unreasonable delay upon discovery of the fraud or he will be held to have ratified the release. The Court found that the plaintiff's failure to rescind by refunding the contract consideration for a period of eighteen months was an unreasonable delay. "His long acquiescence and failure to complain promptly, *as was his duty* on discovery of the true conditions operated, as a matter of law, . . . to reaffirm the contract of settlement which has now become a bar to the prosecution of his stated original cause of action." *Id.* at 604 (emphasis added).

*Randall v Railway Co, supra,* is also instructive on this issue. This Court made three specific findings in *Randall.* First, the Court adhered to the general principle that a settlement agreement was binding "until rescission by repudiation and ten-

---

[20] As a safeguard in a situation such as in *Bertha,* (i.e., tender offered but refused) we suggest that plaintiff place the consideration received in an escrow account with the court. Such action on the part of a plaintiff will remove any doubt as to whether tender, in fact, occurred. Further, it will provide a time frame from which the trial court can access whether tender occurred within a reasonable time.

der." *Id.* at 423. Then the Court stated that tender was a prerequisite to the right to repudiate and that the commencement of a lawsuit is not a proper means to repudiate a settlement. Finally, the Court held:

> It is finally contended by appellant that, if any tender was necessary, the tender made on the trial was sufficient. We think not, for the reasons stated and for the further reason that the tender was not made within a reasonable time. The long period of delay from the date of settlement to date of tender at the trial, of two and a quarter years, cannot be said to be a reasonable time as matter of law. [*Id.* at 424. Citations omitted.]

The rule that is derived from the foregoing analysis is that tender must occur within a reasonable time after the plaintiff learns of the grounds upon which the release and settlement could be repudiated. What is reasonable under the circumstances is a matter of discretion for the trial court. Thus in this case, had Ms. Stefanac made an offer of tender within the eight-month period between the execution of the release and the filing of suit, the issue of the reasonableness of her action would have been a matter of discretion for the trial court. However, the trial court had no occasion to rule on this issue because instead of repudiating the release agreement plaintiff proceeded to file suit in contravention of the terms of the release.

Independent of the issue what constitutes a reasonable time within which to repudiate a settlement is the question whether tender is permissible after commencement of an action in contravention of an agreement. Prior to this action, the issue was not squarely before the Court. The cases which have factually disallowed tender after the com-

mencement of an action have not always clearly identified the rationale behind such action.[21] It has not been clear in those cases whether the litigation was barred because tender did not occur within a reasonable time or whether it was the lawsuit itself that prevented the plaintiff from asserting a claim. However, we find the rule to be that in order to preserve the right to challenge or rescind a release agreement, tender must occur prior to or simultaneous with the filing of a suit alleging a cause of action arising out of the release agreement.

Plaintiff relies on *Carey v Levy,* 329 Mich 458; 45 NW2d 352 (1951), and *McDonald v Zinn Drywall,* 134 Mich App 270; 350 NW2d 864 (1984), which in turn relies on *Carey,* to support her argument that the tender in this case, after the commencement of suit, was within a reasonable time. Plaintiff further argues that what constitutes a reasonable time must be determined case by case. We disagree.

In *Carey,* the plaintiff brought suit to recover damages as a result of an automobile accident. As a defense, the defendant offered the release executed by the parties. The trial court conditionally dismissed the action, allowing the plaintiff a forty-day grace period within which to make restitution. The plaintiff refused to comply with the order and then appealed. The only question at issue on appeal was whether the plaintiff had an obligation to tender any consideration.

The Court adopted in its rationale, without reference to the grace period, the general proposition that the plaintiff had an obligation to tender the consideration:

---

[21] See, e.g., *Burns v Reading Estate, supra, Randall v Railway Co, supra, Speath v Merchants' Life Ins Co,* 245 Mich 100; 222 NW 88 (1928), *Kirl v Zinner, supra,* and *Leahan v Stroh Brewery Co, supra.*

Unless we hold in accord with the foregoing authorities, *we permit plaintiffs to retain the money they received from defendants, notwithstanding they would withhold from defendants the consideration for which the money was paid to plaintiffs—i.e., the release from liability and from the annoyance and expense of litigation.* "If that (claimed loss of memory) disposes of the matter a safe retreat is open to parties to a settlement, for it shows an easy way to avoid a release." *Kirl v Zinner, supra.* And further, it would materially tend to discourage settlements between parties involved in this type of cases, if the settlement could be avoided without restitution. Why should one pay a substantial sum for his release from an asserted liability, if he knows that the opposite party by merely advancing a claim of mental incompetency may disavow his release and bring suit without first placing the defendant *in statu quo?* See "Restitution and Unjust Enrichment," 46 Am Jur, p 99.

"The requirement that the other party to the transaction should be placed in his original position exists to prevent enrichment by the rescinding party at the expense of the other." Restatement of the Law, Restitution, ch 2, § 65e. [*Id.* at 464-465. Emphasis added.]

However, despite this reasoning, the Court, apparently following the lead of the trial court which had not been disputed by the defendant, remanded, giving the plaintiff thirty days to tender restitution and reinstate the suit. The issue of the grace period was simply not before the Court. The defendant's failure to object to the trial court's order amounted to a waiver of the issue.

We hold as a matter of law that a plaintiff must, in all cases where a legal claim is raised in contravention of an agreement, tender the consideration recited in the agreement prior to or simultaneously with the filing of suit. To allow a grace

period for tender after the commencement of a lawsuit would undermine the very rule announced by this Court in *Carey*. Although seemingly harsh, we find that this rule is necessary in order to preserve the stability of release agreements. As we have previously stated, a defendant is entitled to rely on the binding nature of the agreement. The very essence of a release and settlement is to avoid litigation. The plaintiff is not entitled to retain the benefit of an agreement and at the same time bring suit in contravention of the agreement.

### CONCLUSION

The indispensable ingredient for the utility of agreements is the principle of enforceability. The uniqueness of an agreement not to sue is that it is an agreement not to enforce other rights—an agreement to forbear enforcement. In an increasingly litigious society, the utility of such an agreement takes on increasing importance, both for overburdened courts and for economic vitality. However, when the very instrument that is intended to insure forbearance of litigation itself fosters a separate layer of litigation that is intended to resuscitate the litigability of the matter that was the subject of the settlement, enforceability (judicial scrutiny) can be defeating of the very stability the contractual instrument is intended to foster. The tender rule, therefore, is of more than historical significance.

Certainly no legal instrument can be totally isolated from judicial review but in order to raise a legal claim beyond the terms of the agreement a plaintiff must tender. When a contract not to sue recites consideration and there is no allegation of fraud in the execution, the tender rule provides a fair and necessary check against the instability of

contracts not to sue. To hold otherwise would undermine the principle of the enforceability of contracts in the broadest sense.

Plaintiff brought suit on August 9, 1984, and it was not until more than a year later that plaintiff manifested an intention to tender the disputed consideration. We hold that plaintiff is not entitled to commence suit in contravention of the settlement agreement.

The judgment of the Court of Appeals is reversed, and the trial court's dismissal of the plaintiff's claim with prejudice is reinstated.

RILEY, C.J., and CAVANAGH, BOYLE, and GRIFFIN, JJ., concurred with BRICKLEY, J.

LEVIN, J. (*dissenting*). The majority, persuaded by employer advocate rhetoric extolling the important role played by settlements in the orderly, expeditious, and smooth administration of justice, and the importance of protecting the inviolability of releases reflecting settlements,[1] and by Judith Stefanac's asserted familiarity with releases,[2] holds

---

[1] See n 13 and accompanying text.

[2] The majority states:

> Plaintiff admits that she read and executed the release agreement. She was the personnel director of the institution and, in fact, had dealt with similar release agreements in other employment termination situations. Thus, we can impute to her full understanding of the terms and conditions of the agreement. [*Ante,* p 167.]

Stefanac's knowledge of the terms of the release does not negate her claim that her signature was obtained by fraud or duress. A person who signs in response to a perfectly clear threat acts knowingly. The signer could resist the threat and suffer the consequences, economic, physical or other. Signing to avoid suffering the consequences is a volitional act in the sense that the signer could accept the consequences of not signing, but is not voluntary in the legal sense of that term.

The concurring opinion goes a step further in factual assessment, a task ordinarily left to the trier of fact:

that she is precluded from obtaining judicial determinations on the merits (i) of her assertion that a release she signed of all claims against Cranbrook was obtained by fraud or duress, and (ii) of her assertion that she was not required, before commencing this action, to tender to Cranbrook the consideration recited in the release, two weeks' pay ($1,042.31), because Cranbrook owed her that amount as vacation pay, and (iii) of her underlying claims of wrongful discharge.

The majority so holds because Stefanac failed, before commencing this action, to tender to Cranbrook $1,042.31, recited as consideration in the release, although

—it was not until more than a year after this

Lastly, I disagree with the dissent on one point. I do not believe the plaintiff was coerced into signing the release. The plaintiff's failure to question the circumstances surrounding the defendant's offer of alleged consideration reflects negligence, not on the part of the defendant, but on the part of the plaintiff. The dissent presumes that the immediacy of the defendant's request that plaintiff sign a release agreement necessarily intimated that the defendant prohibited the plaintiff from retaining an attorney. I disagree.

The implicit alleged threat, "sign now or forego your money," still carried with it the notion that the plaintiff should have been, with or without an attorney, concerned or at least hesitant about signing away her right to sue *at any price,* especially if she felt she had been wronged in her dismissal. Therefore, in my view, there was no actionable coercion in this case. [*Post,* p 227.]

The view expressed in the concurring opinion suggests that as the seriousness of the threat escalates, the person threatened is less justified, and more negligent, in signing. It was for the trier of fact to decide whether the threat was real or not, and of such immediacy that Stefanac's signature was obtained by fraud or duress. A person not easily intimidated might reject outright a threat. The trier of fact might conclude, however, that a reasonable person in Stefanac's position might respond to the threat by thinking twice about *not* signing the release, and, as a consequence, relinquishing or delaying receipt of monies owing to her. In other words, the trier might find that Stefanac did not act unjustifiably in reacting to the threat by thinking first about the consequences of noncompliance and, only after receipt of the money concededly due her, about the rights she lost by signing.

action was commenced that Cranbrook raised the issue of Stefanac's failure to tender;[3]

—Stefanac tendered the $1,042.31 shortly after Cranbrook moved to dismiss because of failure to tender;[4]

—Cranbrook would assuredly have refused to accept the $1,042.31 had it been tendered at anytime earlier.

A

In deciding whether tender is required before suit, the circuit court and the Court of Appeals were, and this Court is, obliged to accept as true

[3] Cranbrook moved in September, 1984, a month after this action was commenced, for summary disposition on the basis of the release. Stefanac responded that the release was invalid because of fraud, duress, and lack of consideration. The motion was denied.

More than a year later, in November, 1985, Cranbrook again moved for summary disposition, alleging for the first time that Stefanac had failed to tender the consideration recited in the release. Stefanac responded that she should be excused from tendering because she had not in fact received any consideration.

The circuit court, relying on *Leahan v Stroh Brewery Co,* 420 Mich 108; 359 NW2d 524 (1984), decided by this Court in December, 1984, ruled that Stefanac's failure to tender the consideration recited in the release required the dismissal of her complaint. The Court of Appeals, also relying on *Leahan,* affirmed the decision of the trial court, and did not reach the question whether Stefanac should have been provided an opportunity, after Cranbrook raised the tender issue, to tender the $1,042.31 before her complaint was dismissed.

[4] Stefanac offered to tender the $1,042.31 three weeks later. This Court vacated the judgment of the Court of Appeals affirming the circuit court dismissal of Stefanac's complaint and remanded the case to the Court of Appeals for consideration of whether Stefanac should have been allowed additional time to tender the consideration. The Court of Appeals, on remand, held that, under the circumstances, Stefanac's tender had been made within a reasonable time, and remanded the case to the circuit court for reinstatement if tender were made within thirty days of the court's order.

Stefanac deposited the $1,042.31 with the circuit court on January 29, 1988, two weeks after the circuit court entered an order reinstating her case.

This Court first denied, and on reconsideration granted, Cranbrook's application for leave to appeal, and stayed proceedings in the circuit court.

the allegations in Stefanac's complaint and in her response to the motion for summary disposition. This Court is thus obliged to proceed on the assumptions, absent judicial determination at the trial level to the contrary, both that the release was in fact obtained by fraud or duress and that Cranbrook did indeed owe Stefanac two weeks' vacation pay not paid to her when the release was signed.

It appears, however, from the majority and concurring opinions,[5] that the disposition by the Court of this appeal is in part based on inferences that the majority has taken upon itself to draw without any issue in that regard having been raised in the motion for summary disposition or otherwise at the trial level.

B

The majority's disposition barring Stefanac from obtaining judicial determinations on the merits is hypertechnical. It exalts form over substance to require tender before commencement of an action to set aside a release when it is apparent that the defendant would not have accepted the tender if it had been made promptly.

Courts generally excuse tender of consideration where tender would be futile.[6] Surely it would not be seriously contended that Cranbrook would have

[5] See n 2.

[6] 5 Corbin, Contracts, ch 61, § 1116, p 627; *Duncombe v Tromble,* 219 Mich 8; 188 NW 267 (1922); *Lackovic v Campbell,* 225 Mich 1; 194 NW 789 (1923).

In *Burns v Misura,* 228 Mich 152, 155; 199 NW 606 (1924), this Court, quoting *Rhines v Skinner Packing Co,* 108 Neb 105, 110; 187 NW 874 (1922), said that where " 'a timely, perfect tender in every respect would have been unavailing [and] [i]t would have been rejected and the attitude of the defendant so shows,' " the plaintiff's failure to tender should not preclude recovery in a court of equity.

Stefanac's lawyer has not contended, however, that since tender assuredly would have been refused, it was not required.

accepted $1,042.31 from Stefanac, and thereby agreed to set aside the release, had that amount been tendered before this action was commenced.

Nor was Cranbrook prejudiced by the delay in tender.[7]

C

The majority's reading of *Leahan v Stroh Brewery Co,* 420 Mich 108; 359 NW2d 524 (1984),[8] is incorrect, and contradicts a well-established tenet of the law of contracts.[9] Parol evidence is always admissible to show that a statement in a document is not true.

Although the release recites the payment of two weeks' pay as consideration (severance pay), Stefanac is not precluded from contending that nothing was actually paid as severance pay because Cranbrook owed her as vacation pay the amount, $1,042.31, purported to have been paid as consideration. And, thus, no separate consideration was actually paid for the release of her underlying claims. And, therefore, because $1,042.31 is owing to her as vacation pay, she need not return the $1,042.31 if the release were to be set aside for fraud or duress. And, accordingly, there was no need to *tender* the $1,042.31 to protect against

---

[7] Since Cranbrook did not raise the tender issue until more than a year after this action was commenced, the only prejudice that Cranbrook could have suffered as a result of the delay in tender was the expense of litigation sustained during the three-week interval between the time that it raised the tender issue and the time the circuit court decided it.

Cranbrook's counsel may not have had the temerity to raise the tender issue because it was so clear that Cranbrook would not have accepted a tender of $1,042.31 had it been earlier offered. The timing of Cranbrook's motion for summary disposition on this issue suggests that it was emboldened to do so by this Court's decision in *Leahan* in December, 1984.

[8] See ns 58 ff. and accompanying text.

[9] See ns 60 ff. and accompanying text.

unjust enrichment of Stefanac should she prevail on her claim that the release should be so set aside.

The question whether a release without consideration is *valid* and the question whether recited consideration must in all events be *tendered* are different questions. The question presented is not whether the release is valid or there must be consideration, but whether whatever is recited as consideration must, whatever the facts and circumstances, be tendered before suit.

I will concede, arguendo, that a release may in some circumstances be valid although no monetary consideration was paid.[10] It does not follow that whatever is recited as consideration must be tendered before suit. The recital of payment may be false. The payee may be entitled to retain the amount paid if the release is set aside because the amount paid belongs in all events to the payee and was not paid as separate consideration for the release of the payee's underlying claims.

There is ample, well-established authority that tender before suit is not required where the creditor (Stefanac) claims both that the release is invalid or otherwise does not bar the action and that the amount recited as consideration is, in all events, owing to the creditor (Stefanac) by the debtor (Cranbrook).[11] This exception is based on the reason for requiring tender, avoidance of the unjust enrichment of the plaintiff that would result if he were permitted to retain, after a release is set aside, consideration paid therefor.[12]

Where the plaintiff claims, and the court finds, that he would be entitled to retain the recited

[10] It is not necessary to consider or decide whether a release needs to be supported by the payment of monetary or other consideration.

[11] See ns 49 ff. and accompanying text.

[12] See n 47 and accompanying text.

consideration after the release is set aside because the amount recited as consideration for the release represents in fact money that accrued and was owing to the plaintiff separate and apart from the claims that were settled by the release and that no consideration was in fact paid to settle those claims, tender is not required.

D

What motivates Cranbrook's legal argument is not so much a desire to prevent prejudice to Cranbrook resulting from delay in tender or to prevent unjust enrichment of Stefanac resulting from retention of the $1,042.31, as it is a desire to convert the law of tender into a jurisdictional requirement—a new statute of limitation of sorts, in addition to the one that protects against stale claims—that bars the costly litigation of potentially embarrassing claims.

Cranbrook contends that rigid enforcement of the tender rule will reduce the proliferation of unjustifiable wrongful discharge litigation. The majority apparently agrees, stating that releases, because they are contracts to discourage litigation, should not themselves become the breeding ground for further litigation.[13] The tender rule is, to the

---

[13] The indispensable ingredient for the utility of agreements is the principle of enforceability. The uniqueness of an agreement not to sue is that it is an agreement not to enforce other rights —an agreement to forbear enforcement. In an increasingly litigious society, the utility of such an agreement takes on increasing importance, both for overburdened courts and for economic vitality. However, when the very instrument that is intended to insure forbearance of litigation itself fosters a separate layer of litigation that is intended to resuscitate the litigability of the matter that was the subject of the settlement, enforceability (judicial scrutiny) can be defeating of the very stability the contractual instrument is intended to foster. The tender rule, therefore, is of more than historical significance. [*Ante,* p 177.]

majority, a means of discouraging litigation of the validity of a release.

The purpose of the tender rule is not, however, to provide a "fair and necessary check against the instability of contracts,"[14] but rather to provide a check against the unjust enrichment of the rescinding party that would result if the rescinding party were allowed to retain the benefits of the contract he attacks.[15]

E

The majority, in stating that tender is a precondition to suit "whenever a legal claim is raised in contravention of settlement agreement, even if joined with an equitable claim," ignores not only the unjust enrichment rationale for the tender rule, but also a critical difference between an action in equity to set aside a release and an action on a "law" count in disaffirmance of the release.

The factual dispute in an action to set aside a release does not involve the merits of plaintiff's underlying claim against the defendant that were resolved by the release if it is valid. It is only if and when the release is set aside that the plaintiff should be able to put the defendant to the expense of defending against the underlying claim.

I agree with the majority that the "very essence"[16] of a release and settlement is to avoid

---

[14] *Ante,* pp 177-178.

[15] See n 47 and accompanying text.

[16] We hold as a matter of law that a plaintiff must, in all cases where a legal claim is raised in contravention of an agreement, tender the consideration recited in the agreement prior to or simultaneously with the filing of suit. To allow a grace period for tender after the commencement of a lawsuit would undermine the very rule announced by this Court in *Carey* [*v Levy,* 329 Mich 458; 45 NW2d 352 (1951)]. Although seemingly harsh,

litigation—litigation concerning the settlement of the *underlying claims,* not litigation of the validity of the release itself.

The rule in equity[17] permitting a plaintiff to maintain an action to set aside a release without tender of consideration paid for the release does not put the defendant to the "annoyance and expense of litigation"[18] of claims discharged by the release.

The consideration paid by a defendant to a plaintiff at the time a release is signed protects only against litigation of the underlying claims, and is not paid to secure, and cannot provide protection[19] against, litigation of a claim that the release was procured by fraud or duress. The consideration does not protect, in the words of the majority, the "very instrument that is intended to ensure forbearance of litigation."[20]

Since the consideration paid for the release does not protect against litigation of a claim that the release is invalid, the consideration need not be returned as a precondition to an attack on the validity of the release itself as distinguished from litigation of the underlying claims. To be sure, if the release is found to be invalid, the consideration paid to protect against litigation of the underlying claims must most certainly then be returned

---

we find that this rule is necessary in order to preserve the stability of release agreements. As we have previously stated, a defendant is entitled to rely on the binding nature of the agreement. The very essence of a release and settlement is to avoid litigation. The plaintiff is not entitled to retain the benefit of an agreement and at the same time bring suit in contravention of the agreement. [*Ante,* pp 176-177.]

[17] Tender is not required before commencement of an "equity" action to set aside a release. See ns 65 ff. and accompanying text.

[18] *Carey,* n 16 *supra,* p 465.

[19] Even *some* protection.

[20] *Ante,* p 177.

before the plaintiff may be permitted to proceed
with litigation of underlying claims.

I

Stefanac was employed for more than two years
as personnel director of Cranbrook, a private
school located in a northwest Detroit suburb. Ste-
fanac, on deposition, testified that on the morning
of November 16, 1983, she was advised by her
supervisor, Robert Kipp, that her employment was
terminated. Later that day, William Powell, a
Cranbrook administrator, entered her office and
presented a release form. According to Stefanac,
Powell waved several checks in front of her, but
did not allow her to examine them. Stefanac be-
lieved the checks to be payroll and expense reim-
bursement checks. Stefanac testified that she
asked Powell if he was implying that she would
not receive the checks unless she signed the re-
lease and that Powell responded, "you've never
been a dumb person." Explaining that she needed
the checks to support her children, Stefanac said
that she was signing the release under duress.[21]

Cranbrook's account of the events on the day
Stefanac's employment was terminated is signifi-
cantly different.[22]

[21] The release stated that Stefanac, in consideration of Cranbrook's
acceptance of her resignation and agreement to pay her for two
weeks' work, would release Cranbrook from all claims, demands, and
causes of action. The release made no mention of severance pay, nor
was severance pay discussed.

[22] According to Powell and Kipp, after the termination of Stefanac's
employment, Kipp asked Powell to meet with Stefanac and present
her with the release. Kipp instructed Powell to give Stefanac two
checks (one for travel reimbursement and one for retirement contri-
bution) but to tell her that she would not receive the third (itemized
as including both four weeks' *vacation pay* and two weeks' *severance
pay*—see n 26) unless she signed the release. Kipp said that legal
counsel had advised him to have Stefanac sign a release and to
condition her receipt of *severance pay* on her signing the release.

Stefanac commenced this action alleging that she had performed her job dutifully and faithfully and that her discharge violated Cranbrook's policy or practice of terminating employees only for major failures in professional conduct. She further alleged that she had been discriminated against on the basis of her sex[23] and that terminating her employment violated public policy.[24]

Three checks were delivered to Stefanac after she signed the release. Two were for amounts owed her for travel reimbursement and retirement contribution.[25] The third was designated as four weeks' vacation pay and two weeks' severance pay.[26]

The third check is in issue. Cranbrook contends that at the time it terminated Stefanac's employment, it owed her four weeks' vacation pay, and that the two weeks' pay, designated on the

Powell testified that on meeting with Stefanac, he immediately gave her the travel reimbursement and retirement contribution checks and told her that he could not give her the third check unless she signed the release. Powell denies that Stefanac asked, "are you telling me that unless I sign this document, I'm not going to get my money," and that he responded, "you've never been . . . dumb . . . ."

Powell asserted that he advised Stefanac not to sign the release until she felt better. Powell said that Stefanac responded that she had helped develop the release, that it did not mean anything anyway, and that she was going to sign it. Powell denied that Stefanac said—other than in the context of this lawsuit—that she had been pressured or coerced in connection with the signing of the release.

[23] She cited rumors spread by Cranbrook employees about her sex life and explicit sexual advances made to her by men in authority at Cranbrook.

[24] Stefanac asserted that she was ordered to destroy a report showing sex discrimination practices at Cranbrook, and to dispose of records of a Cranbrook policy discriminating in the admission of Jewish students. Stefanac further charged that she was instructed to hire only males for certain positions and only females for other positions and that her knowledge of and opposition to these practices and policies led to the termination of her employment.

[25] In addition, Stefanac may have received a regular paycheck for wages.

[26] The check voucher indicates that the gross pay was $3,126.93 ($2,084.62 in vacation pay and $1,042.31 in severance pay).

voucher accompanying the check as severance pay, was the two weeks' pay ($1,042.31) recited as consideration in the release.

Stefanac asserts that, at the time her employment was terminated, Cranbrook owed her at least six weeks' vacation pay.[27] Thus, when Cranbrook paid her six weeks' pay, it paid her only the vacation pay it owed her and did not pay her the two weeks' pay recited as consideration in the release.

## II

I share the majority's concern with protecting the integrity of *settlements*. It is, however, surely at least debatable whether the law should characterize as a settlement what occurred at Cranbrook on the day Stefanac was discharged.

### A

Stefanac claims that a few hours after her discharge—before she had asserted a claim of any kind against Cranbrook—a Cranbrook official confronted her with a release form and led her to believe that the only way she could take home checks for amounts admittedly owed her was to sign the release.

A release is valid only if it is fairly and knowingly made,[28] and is invalid if entered into as a result of duress[29] or fraud.[30] Parol evidence is admissible to show duress[31] or fraud.[32]

---

[27] Stefanac maintains that Cranbrook owed her four weeks' vacation pay for her last year at Cranbrook and two or more weeks' vacation pay for the preceding year.

[28] *Denton v Utley,* 350 Mich 332, 342; 86 NW2d 537 (1957).

[29] *Weiser v Welch,* 112 Mich 132, 136; 70 NW 438 (1897).

[30] *Stewart v Eldred,* 349 Mich 28, 32; 84 NW2d 496 (1957).

[31] *Hobbs v Brush Electric Light Co,* 75 Mich 550, 553; 42 NW 965 (1889).

[32] *Kulenkamp v Groff,* 71 Mich 675, 678; 40 NW 57 (1888); *Rood v Midwest Matrix Mart, Inc,* 350 Mich 559, 564; 87 NW2d 186 (1957).

The question whether Stefanac, in fact and law, suffered duress or was induced by fraud to enter into the release has not been briefed or argued. This Court, before adopting the view that the writing signed by Stefanac bars her claims, should, nevertheless, scrutinize both the writing and the context in which Stefanac signed.

B

The writing, prepared by Cranbrook, begins with an untrue recital. The opening line states, "For and in consideration of Cranbrook Educational Community's (Cranbrook) acceptance of the *voluntary* resignation of Judith Stefanac . . . ." Stefanac did not voluntarily resign from Cranbrook. Her employment was involuntarily terminated.[33]

It would seem that a writing, prepared by Cranbrook, that begins with a knowingly false recital of fact warrants close scrutiny rather than the reverence with which the majority vests this writing. Cranbrook's reliance on a writing prepared by it containing statements of fact known to have been false when made is a further reason to allow Stefanac the opportunity to show that other statements of the writing, including the recital of consideration and the disclaimer of duress, were also untrue.

It was not Stefanac who, armed with claims against her employer, negotiated with Cranbrook

---

[33] Cranbrook acknowledged:

> Although all parties involved acknowledge that she [Stefanac] was involuntarily discharged, Plaintiff signed a release of claims designating her departure as a "voluntary resignation . . . ."

and ultimately accepted two weeks' pay in full settlement. It was, rather, Cranbrook that sought out Stefanac only a few hours after the termination of her employment. Cranbrook confronted Stefanac with the writing before she had time to overcome the stress she claimed she experienced as a result of her discharge from employment, or time to consider possible courses or causes of action or to consult with a lawyer to frame a strategy for bartering for her claims.

> [T]he very fact of "haste," when coupled with nominal payment, is a potent factor courts take into account when cases like this arrive before them. [*Hall v Strom Construction Co,* 368 Mich 253, 261; 118 NW2d 281 (1962).]

Cranbrook's conduct might be found by the trier of fact, were this Court to allow the factual issues to be decided on the merits, to be comparable to a preëmptive strike by an insurer who obtains a "rush release" from an injured person shortly after an accident.[34]

---

[34] In that context it has been said:

> The element of time, such as the length of time that expired between the occurrence of the damage or injury and the signing of the release, may be an important factor in determining whether a release should be held invalid for mistake or fraud. If the releasee obtained the release within a few days after the injury occurred, there is a possibility that the releasor did not have a chance to discover the true extent of the injuries or to place a proper value on them. [66 Am Jur 2d, Release, § 62, pp 746-747.]

And further:

> "The sharp economic inequality of the bargaining parties which generally exists in this class of cases has also been considered by the courts in their consideration of this doctrine." [*Id.,* pp 260-261, quoting *Clancy v Pacenti,* 15 Ill App 2d 171, 177; 145 NE2d 802 (1957).]

C

Cranbrook acted on the advice of counsel. Stefanac did not.

It has become common for employers to use the exit interview as a means of obtaining a "rush release" by offering a discharged employee separation or severance pay on a take-it-or-leave-it basis. The employee is told if he does not sign before he leaves the room, the offer will be withdrawn.

A system of justice that expects lawyers to move from take-it-or-leave-it positions to settle civil and criminal cases[35] should ponder whether to bestow the imprimatur of legitimacy on a release signed by an unrepresented, discharged employee, lacking in economic resources, and responding under emotional stress to an on-the-spot, take-it-or-leave-it offer by a well-advised and economically advantaged employer.

There was a time when a lawyer would not prepare documents for a client to be signed by another party, known not to be represented by counsel, unless the lawyer or the client, in submitting the document to the other party, strongly recommended that the unrepresented party obtain counsel before signing the document and allowed time to do so.

In *Wahsner v American Motors Sales Corp*, 597 F Supp 991 (ED Pa, 1984), the plaintiffs, co-investors/operators of an automobile dealership, filed an action against an automobile manufacturer and its zone manager for bad-faith termination in violation of the Automobile Dealers' Day in

---

[35] I do not wish to be understood as saying that there is anything wrong with a take-it-or-leave-it offer where the offeree is provided adequate time to obtain counsel and evaluate his legal position. A take-it-or-leave-it offer might be generous.

Court Act.[36] The defendants interposed as a defense releases signed by the plaintiffs on the day their employment was terminated.[37]

The court noted that the plaintiffs were not given advance warning that their employment would be terminated, that they were not provided with an opportunity to consult counsel or given more than twenty minutes to decide whether to sign the release—a decision that could affect the rest of their economic lives.

---

[36] 15 USC 1221-1225. But the duress issue was decided under Pennsylvania law:

> Under Pennsylvania law, the conditions under which Wahsner and Novin signed the releases may constitute duress. Pennsylvania law is the appropriate law to apply here with respect to the validity of the releases. [*Wahsner v American Motors Sales Corp,* 597 F Supp 991, 997 (ED Pa, 1984).]

[37] After the plaintiffs had been operating the dealership for just short of three years, they were called into a meeting of the board of directors and their resignations were requested. The plaintiffs, having had no forewarning that their resignations would be requested at this meeting, were flabbergasted at the request and refused to resign. They were told that if they did not resign the board would remove them and they would leave the meeting with nothing at all. When the two men again refused to resign, the board offered them $5,000 in cash settlement, two weeks' severance pay, and use of the company car. The board allowed the two men twenty minutes to discuss the offer in private.

After discussing the offer together, the plaintiffs decided that they should resign. The branch manager reassured them that they would each receive $5,000 and agreed to provide them with letters of recommendation and continued hospital coverage. The plaintiffs then tendered their resignations. Both men received checks for $8,184.58 (two weeks' severance pay plus $5,000 less withholding taxes), two weeks' and three days' vacation pay, use of the company car, continued medical insurance, and a letter of recommendation. The plaintiffs executed letters of resignation, assignments of stock, waivers of certain rights under the stock agreements, and general releases.

On deposition, the plaintiffs stated that they believed that the branch manager's statement that they would receive nothing if they did not resign meant that they would have to walk home because they had arrived in a company car. One of the plaintiffs also testified that he felt under great pressure to sign the release—he was concerned that he would have difficulty finding work elsewhere and he could not risk losing the security being offered because he had a family to support and a child with a heart ailment.

Plaintiffs' negotiation of more benefits than were originally offered did not, according to the court, substitute for the assistance of counsel. The court said that the plaintiffs were presented with an all-or-nothing choice; they were told that if they did not resign during the meeting they would leave the meeting with absolutely nothing. Holding that under Pennsylvania law, the conditions under which the men signed the releases might constitute duress, the court denied the defendants' motion for summary judgment.

D

The law does indeed favor compromise and settlement. It also recognizes, I agree, that persons often face difficult choices, and that they should be held to their agreements.[38] But it is the courts' role to enforce compromises, not to create them.[39] This Court invades the province of the trier of fact in finding that what occurred at Cranbrook on the day Stefanac's employment was terminated constituted a "settlement" or a "compromise."[40]

---

[38] See n 35.

[39] *Baker v Chicago Fire & Burglary Detection, Inc,* 489 F2d 953, 957 (CA 7, 1973).

[40] The doctrine of duress has been greatly expanded since its early common-law origin. Despite the general enlargement of the doctrine of duress to encompass economic duress, the law in Michigan may have lagged behind. Some fairly recent Michigan cases cite *Hackley v Headley,* 45 Mich 569; 8 NW 511 (1881), for the propositions that a claimant who relies on a theory of economic duress must prove a wrongful or unlawful act, that refusal to pay a debt due on demand is not wrongful, and that fear of financial ruin is not sufficient basis for claiming economic duress. See *Transcontinental Leasing v Michigan Nat'l Bank of Detroit,* 738 F2d 163, 166 (CA 6, 1984) (applying Michigan law), and *Apfelblat v Nat'l Bank,* 158 Mich App 258; 404 NW2d 725 (1987).

Duress, under the modern formulation, is present when a person, by the unlawful act of another, is induced to make a contract under circumstances that deprive him of free will. *Norton v State Hwy Dep't,* 315 Mich 313, 320; 24 NW2d 132 (1946).

Stefanac testified that she was offered a choice of either signing away her claims against Cranbrook in exchange for two weeks' pay or forgoing receipt at that time of amounts that Cranbrook conceded it owed her for vacation pay, expense reimbursement, retirement contribution and wages. If those were in fact the circumstances, the release no more represented an accord or settlement and has no more validity than if she had signed under threat of physical harm. The law does not permit an employer to withhold the payment of wages and other amounts due an employee to coerce the employee into releasing claims against the employer.

If there was no accord or settlement, if the release has no validity, cashing the check that included the two weeks' pay was not a satisfaction.[41]

E

Had Cranbrook paid Stefanac the amounts it admittedly owed her and, after checks therefor had been delivered, offered Stefanac two weeks' pay in exchange for a release of any and all

---

The absence of any true negotiation between the parties has been regarded as an indication that there was economic duress. See *Wise v Midtown Motors,* 231 Minn 46; 42 NW2d 404 (1950).

See also *Capps v Georgia Pacific Corp,* 253 Or 248, 253; 453 P2d 935 (1969); *Totem Marine Tug & Barge, Inc v Alaska Pipeline,* 584 P2d 15 (Alas, 1978); *German v Carnegie-Illinois Steel Corp,* 169 F2d 715, 719 (CA 3, 1948); *Manno v Mutual Benefit Health & Accident Ass'n,* 18 Misc 2d 80, 83; 187 NYS2d 709 (1959); *Tallmadge v Robinson,* 158 Ohio St 333, 339; 109 NE2d 496 (1952); *First Nat'l Bank of Cincinnati v Pepper,* 454 F2d 626 (CA 2, 1972); 13 Williston, Contracts (3d ed), § 1603, pp 664-665 and § 1617, p 704; 1A Corbin, Contracts, § 171 (1989 Supp), pp 316-317; Restatement Contracts, 2d, § 176, comment a, p 482.

[41] The disputed consideration, two weeks' pay, was included in a check that was also for four weeks' vacation pay Cranbrook conceded owing.

possible claims,[42] and had Stefanac signed the
release and then accepted the check, a different
question would be presented. Stefanac would then
have been free to accept or reject the offer of two
weeks' pay in exchange for the release of all
claims without forgoing the receipt of money ad-
mittedly owing. The release might then[43] properly
be seen as evidencing an accord and settlement.

## F

Stefanac's supervisors testified on deposition, in
effect, that they did not withhold payment of
amounts to Stefanac and that they had been in-
structed to deliver the expense reimbursement and
retirement contribution checks to her without re-
gard to whether she signed the release.[44] The
check for the two weeks' severance pay was, how-
ever, included in the same check that had been
written for the four weeks' vacation pay Cran-
brook conceded it owed her. That tends to support,
somewhat, Stefanac's assertion that she could not
obtain the four weeks' vacation pay unless she
signed the release.

Be that as it may, this Court should provide
Stefanac an opportunity to prove her claim that
she could not obtain amounts admittedly due her
without signing the release, and that the two
weeks' pay, recited as consideration in the release,
was, as she asserts, owed as an additional two
weeks' vacation pay.

## III

The general rule is, indeed, that a person who

---

[42] Including the claim for an additional two weeks' vacation pay as
well as the other claims alleged in her complaint filed in this action.

[43] But see text following n 34 and also n 35.

[44] See n 22.

claims that *he has rescinded* a contract cannot retain consideration received under the contract, and must tender recited consideration before commencing an action in disaffirmance of the contract.[45] The rule is an expression of the principle that "you can't have your cake and eat it too."

A

The reason for requiring tender is to prevent unjust enrichment:

> "The requirement that the other party to the transaction should be placed in his original position exists to prevent enrichment by the rescinding party at the expense of the other." [*Carey v Levy*, 329 Mich 458, 465; 45 NW2d 352 (1951), quoting Restatement Restitution, ch 2, § 65e.][46]

The commentary provides, however: "[T]he reason for the [tender] rule limits it."[47] The commentary elaborates that tender is not required where

[45] *Randall v Port Huron, St C & M C R Co,* 215 Mich 413; 184 NW 435 (1921).

[46] Other cases express the theory that where a party seeks to rescind a contract on the ground of fraud, he should tender promptly upon discovery of the fraud, lest he be held to have ratified the contract. See *Crippen v Hope,* 38 Mich 344 (1878); *Burns v Reading Estate,* 188 Mich 591, 602; 155 NW 479 (1915).

In *Kirl v Zinner,* 274 Mich 331, 335; 264 NW2d 391 (1936), one can find still another argument for requiring the return of consideration paid for a release before one who has signed it may maintain an action in disaffirmance of the release:

> It is a general and salutary rule that one repudiating or seeking to avoid a compromise settlement or release, and thereby revert to the original right of action, must place the other party *in statu quo,* otherwise the very fact of payment, in consideration of the compromise or release, will likely operate as a confession of liability.

[47] Restatement Restitution, ch 2, § 65e.

the rescinding party was entitled "to retain what the other gave" as consideration.[48]

That statement in the commentary is based on the reason for requiring tender, to prevent unjust enrichment. If, as Stefanac contends, Cranbrook was indebted to her for the amount of the "consideration," requiring her to return the disputed "consideration" would disturb, rather than re-establish, the status quo. Cranbrook would be unjustly enriched at Stefanac's expense.[49]

There is considerable authority that tender before suit is not required where the alleged consideration either was, or arguably was, payment for

---

[48] Where, aside from the transaction, the person seeking restitution would be entitled to retain what the other gave as the result of the agreement, the transaction does not enrich him even though he retains such things, nor does it diminish the net assets of the other . . . . [*Id.*]

The commentary is illustrated with the following example:

> A owes B a sum which is uncertain, but which is not less than $100. By fraudulent representations A induces B to accept Blackacre with $100 in money, in exchange for Whiteacre and a release of the debt. B is entitled to rescission of the transaction upon tender of a deed to Blackacre without a tender of $100, which will be credited upon the original debt. [*Id.*, illustration 8, pp 261-262.]

[49] The United States Court of Appeals for the Second Circuit was faced with a similar circumstance in *First Nat'l Bank of Cincinnati v Pepper*, n 40 *supra*, p 635. A lawyer, wrongfully asserting a lien on his clients' records, demanded that they execute a settlement agreement within which they agreed to pay him legal fees allegedly due him. The court found that the settlement contract was entered into under duress. Addressing the tender rule, the court said:

> *Where duress of property or goods has been found, it has never been suggested that one adjudicated to have wrongfully withheld another's property or goods for purposes of procuring forced assent to a contract resulting in an extortionary payment should receive back upon rescission the very property to which he had no right.* Such a result would be extraordinary indeed and contrary to logic, reason and equity; we decline to assume that it would be required here. [Emphasis added.]

an already existing debt between the defendant
debtor and the plaintiff creditor:

> [A] party who attempts to rescind a transaction
> on the ground of fraud, mistake, or otherwise, is
> not bound to restore that which he has received by
> virtue thereof, when, in any event, he is entitled to
> retain it as indisputably his own whatever may be
> the fate of his effort to rescind the transaction. [12
> Williston, Contracts (3d ed), § 1530, pp 646-648.]

There is not universal agreement concerning
when recited consideration must be tendered.[50] It
has been said that there are many exceptions to
the general rule requiring tender,[51] including "that

[50] Some cases do indeed require tender as a precondition to com-
mencement of an action. Others have recognized that tender is timely
if made with the filing of the plaintiff's reply to a plea of the release.
Cf. *McGregor v Mills,* 280 SW2d 161 (Ky, 1955). Others have allowed
tender during the course of the trial. Cf. *Keefe v Jefferson,* 151 Minn
368; 186 NW 789 (1922). Still others suggest that tender must simply
occur within a reasonable time under the circumstances of the case
after discovery of the grounds for rescission. Cf. *Carey v Levy,* n 16
*supra,* p 464, and *McDonald v Zinn Drywall,* 134 Mich App 270, 277;
350 NW2d 864 (1984) (where the courts, having found that restitution
was required, allowed the plaintiffs an additional thirty days in which
to tender or have their suits dismissed).

[51] The requirement of restoration, however, is subject to several
exceptions. . . . In other cases where on the particular facts it
seems equitable to allow rescission without complete or perfect
restoration of the consideration, the growing tendency favors
the relief, and courts of law adopting the more liberal rule in
equity no longer adhere to the strict construction generally
upheld in the earlier decisions. [12 Williston, Contracts (3d ed),
§ 1530, pp 646-648.]

Even in jurisdictions in which the general rule is that a
tender or return of the consideration must be made, it has been
recognized that the rule is not inflexible and that there are
exceptions thereto, and, in the final analysis, the question of
whether the rule applies in a given case depends on the facts of
such case. [76 CJS, Release, § 37, p 666.]

Occasionally, [a trial court judgment dismissing plaintiff's
case for failure to tender] is reversed because the requirement
of restitution is viewed as too burdensome in the particular
circumstances . . . . [1 Palmer, Restitution, § 3.11, p 301.]

restoration is not necessary where the money received by the party was due him in any event and if returned could be recovered back." *Baker v All States Life Ins Co,* 46 Ohio 308, 312; 96 NE2d 787 (1950).[52]

The factual scenarios underlying this Court's decisions in *Fritz v Marantette,* 404 Mich 329, 335; 273 NW2d 425 (1978), and *Urben v Public Bank,* 365 Mich 279; 112 NW2d 444 (1961), are instructive. In *Fritz,* the plaintiff-seller of corn, brought an action to recover the unpaid balance on a contract from Marantette, the defendant-purchaser. The defendant said that the corn was inferior, that the plaintiff had agreed to a deduction from the contract price, and that the plaintiff's acceptance of the check endorsed "corn contract paid in full" for the reduced price constituted an accord and satisfaction. The plaintiff crossed out the endorsement before depositing the

"If, in the final adjudication, the equities of the parties can be protected, failure to make formal tenders is not fatal to the proceeding." [*Ted Price Construction Co v Cascade Natural Gas Corp,* 307 F2d 741, 744 (CA 9, 1962), quoting *Cain v Norman,* 140 Wash 31; 248 P 71 (1926).]

Courts have excused tender where the plaintiff was in financial difficulty and unable to raise the consideration, *Ted Price Construction, supra,* pp 743-744, and where the plaintiff signed the release under duress, *Perkins Oil Co of Delaware v Fitzgerald,* 197 Ark 14, 30-31; 121 SW2d 877 (1938).

[52] In *Provident Life & Accident Ins Co v Bertman,* 151 F2d 1001, 1005 (CA 6, 1945), the court said:

Appellant also contends that the appellee cannot question the settlement since he did not return the consideration paid to him. An exception to this rule is made in Ohio when the money received by the party was due him in any event and if returned could be recovered.

Similarly see *Kentucky Central Life & Accident Ins Co v Burrs,* 256 Ky 64, 68; 75 SW2d 744 (1984), *Leaper v Vaught,* 45 Idaho 587, 593-594; 263 P 386 (1928), *Vavrika v Mid-Continent Co,* 143 Neb 94, 96-97; 8 NW2d 674 (1943), and 1 CJS, Accord & Satisfaction, § 70, p 568.

check.[53] The plaintiff did not return the proceeds of
the check before commencing an action for the
unpaid balance. This Court, observing that
"whether a particular set of facts amounts to an
accord and satisfaction is generally a question of
fact for the fact-finder," held that the trial court
did not err in allowing the case to go to the jury.[54]

In *Urben,* an employee sued his former em-
ployer. This Court held that the question whether
there was an accord and satisfaction is a question
of fact.[55] It does not appear that the final paycheck,
claimed by the defendant to have been paid in full
consideration of all claims, was tendered before
suit. In *Sall v Luxenberg,* 302 So 2d 167 (Fla,
1974), the court said that the principle requiring
tender would not be applied on the record in that
case because "the consideration for the release
which would determine the amount of tender is
presently in dispute."

---

[53] *Fritz v Marantette,* 404 Mich 329, 331; 273 NW2d 425 (1978).

[54] The Court explained that two interpretations of the facts could
support a jury determination for the plaintiff: Either the jury could
find that the debt was liquidated and undisputed, or the jury could
find that the amount paid represented the undisputed portion of the
corn contract. *Id.,* pp 334-335. By implication, if the check represented
a compromise of a good-faith dispute concerning the worth of the
corn, the negotiation of the check would consummate an accord and
satisfaction.

[55] The plaintiff, a bank employee, sued the Public Bank, his em-
ployer. The bank responded that the plaintiff's acceptance of a final
paycheck was in full satisfaction of all salary owed the plaintiff. The
defendant claimed the check was endorsed "[s]alary and overtime pay
through August 14, 1958, plus 2 weeks severance pay in lieu of
notice." *Urben, supra,* p 283. The plaintiff maintained that at the
time he accepted the check, his employer promised to settle for the
balance at a later date. The plaintiff also claimed that the check did
not contain the endorsement claimed by the defendant. The Court
said that the cases cited by the defendant for its contention that the
cashing of the check was an accord and satisfaction were all distin-
guishable because

> [u]nlike the instant case, there was no dispute in the cases cited
> with respect to the facts surrounding the check and its accep-
> tance. [*Id.,* p 284.]

*Fritz* and *Urben* recognize that, notwithstanding that a check contains words of release, where there is a dispute whether the money received by the plaintiff constituted payment of a liquidated debt owed by the defendant, the question what debts were settled by the payment cannot be determined as a matter of law.[56] *Sall* indicates that where there is a dispute, tender is not a prerequisite to commencement of an action.

The legal issue, obfuscated by the polarized employer versus employee posture in which the issue arrives for decision, might be clearer if the plaintiff were a businessman and not an employee claiming wrongful discharge. And the businessman asserted in his complaint, with apparent plausibility, that he had sold merchandise for $25,000 to a defendant who turned out to be a deadbeat, and that defendant deadbeat had strong-armed plaintiff businessman into accepting $10,000 and signing a release of the remaining $15,000.

I doubt that this Court would require the businessman to run the risk of returning the $10,000 to defendant deadbeat as a precondition to commencing an action for the $15,000, even though defendant deadbeat responded to plaintiff's complaint by denying that he owed the $15,000 or the $10,000, denying that he was a deadbeat or that he had strong-armed the plaintiff, and by imploring this Court to underscore the importance of encouraging and protecting settlements and the sanctity of written documents by requiring the return of the $10,000 as a precondition to suit for the $15,000, trusting deadbeat to be found and to pay a judgment should the Court ultimately find for the plaintiff.[57]

---

[56] See *Fritz,* p 334, and *Urben,* p 284.

[57] Cf. *Fritz, supra.*

IV

The majority extends *Leahan* beyond the scope of the decision in that case and, in so doing, ignores a well-recognized exception to the parol evidence rule.

A

The Court of Appeals and now the majority in this Court, reading *Leahan* out of context,[58] interpret it as setting forth some sort of parol evidence rule. They erroneously read *Leahan* as precluding Stefanac from proving by extrinsic evidence, before being required to tender, that, if the release were set aside, she would be entitled nevertheless to retain the consideration recited in the release because Cranbrook owes her that amount as vacation pay and, thus, there is no need to tender that

[58] At the time of his discharge from Stroh Brewery Company, fifty-four-year-old John Leahan was the senior corporate vice president of Stroh and president of two Stroh subsidiaries and was receiving an annual compensation in excess of $250,000 plus other benefits. In December, 1978, Leahan was summarily discharged and presented with a letter of resignation which had been prepared by Stroh and its legal counsel. Leahan was not allowed to consult with counsel and was told that he must sign the document or suffer the loss of all compensation and benefits. Leahan signed the letter that included a general release of all claims against Stroh. The letter promised Leahan sizeable benefits. The release stated that if Leahan performed duties requested by Stroh's president and refrained from employment elsewhere, he would be continued at his base salary of $10,355 per month until March, 1979, that Leahan would serve as consultant to Stroh for $93,195, and that Leahan's medical coverage and his membership at the Detroit Athletic Club would be continued.

The final paragraph of the letter stated that "[*i*]*n further consideration of the foregoing,*" Leahan would discharge Stroh from all claims and actions. Subsequently, Leahan commenced an action against Stroh, alleging age discrimination and breach of employment contract. Citing the release, Stroh moved for partial accelerated judgment. Stroh noted that Leahan had failed to tender the consideration supporting the release. Leahan responded that the contract was void for duress and lack of consideration and that he should be excused from tendering *because all the benefits paid to him were in consideration of his agreement not to compete.*

amount before suit to guard against unjust enrichment.

Leahan argued that the language of the letter he signed supported his claim that the consideration recited in the letter was paid solely in exchange for future performance by Leahan of "specific tasks and obligations" and that no consideration was paid for the release of the claims he sought to assert in the lawsuit. The Court looked at the language of the letter and ruled, as a matter of construction of the language, that the recited consideration was paid in exchange for release of the claims there described as well as for the "specific tasks and obligations" undertaken by Leahan.

The Court in *Leahan* thus merely resolved a dispute concerning how the language of the letter should be construed.[59] The Court held only that

---

[59] In a concurring opinion, Chief Justice WILLIAMS said:

> [I]f plaintiff had offered proof that only part of the consideration he received was for the release . . . and if plaintiff had tendered back that part attributable to the release, then accelerated judgment should have been denied . . . . [*Leahan, supra,* p 114.]

The circuit court, agreeing with Stroh, ordered accelerated judgment on the grounds that Leahan's failure to tender the consideration received was fatal to his claim. On appeal, Leahan, reiterating his claim that the letter did not provide for consideration, said:

> A review of the December 4 *agreement itself* clearly shows that *all the consideration paid to the Plaintiff was for specific tasks and obligations which the Plaintiff agreed to perform for the Defendants and not for the release provision.* [Emphasis added.]

In reply, Stroh cited the language of the final paragraph of the letter: "[i]n further consideration of the foregoing" to support its contention that the release was supported by all the considerations described in the earlier paragraphs of the letter.

It was against this background that the Court of Appeals, unpublished opinion per curiam, decided May 27, 1982 (Docket No. 56225), said:

Leahan had not established that the consideration was paid solely in exchange for the "specific tasks and obligations" and not for the release of the claims in suit.

B

If *Leahan* were read as barring evidence that recitation of payment of consideration was untrue, and thus no consideration was received, then

> Plaintiff's argument that none of the benefits received by him pursuant to the resignation agreement were consideration for the release agreement is directly contrary to the express language of the release agreement within the contract, and without merit.

This Court affirmed the Court of Appeals decision in *Leahan* in a per curiam opinion. This Court simply repeated the factual observation of the Court of Appeals to the effect that the express language of the release was contrary to the plaintiff's assertion that the consideration was for tasks and obligations other than the claims in suit:

> On this appeal, as in the lower courts, the plaintiff does not challenge the underlying principles of *Carey v Levy,* 329 Mich 458; 45 NW2d 352 (1951), and similar cases. He contends, rather, that in this case *none of the consideration he received as a result of the December 4, 1978, agreement was for the release.* Thus, he maintains that there is no amount that he is required to tender in order to challenge the release on the ground of duress.
>
> We agree with the Court of Appeals that *the express language of the release agreement is contrary to the plaintiff's assertion.* Accordingly, the judgment of the Court of Appeals is affirmed. [*Leahan, supra,* p 113. Emphasis added.]

This Court's brevity in *Leahan* left the door open for future misunderstanding. In *Stefanac,* the Court of Appeals tumbled in. Today, the majority follows. The majority quotes the following passage from the Court of Appeals opinion in *Stefanac:*

> "[T]he consequence of the *Leahan* decision is that if a release recites that consideration was paid and *if money was in fact paid,* a plaintiff may not argue that the money was not actually consideration, regardless of any evidence to that effect. That seems to be what *Leahan* holds. If not, we believe it is up to the Supreme Court to say so. . . ." (Emphasis added.) [*Ante,* p 162.]

*Leahan* would contradict a universal tenet of the law of contracts that the parol evidence rule does not prevent a showing that there has been nonpayment/failure of consideration:[60]

> The vast majority of cases have held that it may be shown that the consideration has not been paid and that no other consideration has been given. This result does not contravene *the parol evidence rule* since this rule *does not prohibit the contradiction of a recital of fact.* [Calamari & Perillo, Contracts (3d ed), § 4-6, p 198. Emphasis added.]

> [I]t may be shown by parol evidence . . . that the validity of the agreement was impaired by . . . lack of or failure of consideration rendering the agreement voidable or void. [4 Williston, Contracts (3d ed), § 634, pp 1017-1018.]

> [T]he acknowledgment of receipt is . . . no more than evidence of certain action by one party in paying and by the other party in receiving payment. The courts have uniformly decided that this evidence is not conclusive, and that any kind of relevant testimony is admissible to rebut it. [3 Corbin, Contracts, § 586, pp 489-490.][61]

---

[60] 66 Am Jur 2d, Release, § 52, pp 730-731.

[61] Similarly see Farnsworth, Contracts, § 7.4, pp 464-465; Simpson, Contracts (2d ed), § 99, pp 199-200; 2 Restatement Contracts, 2d, § 214, p 132.

> A and B make an integrated agreement by which A promises to complete an unfinished building according to certain plans and specifications, and B promises to pay A $2,000 for so doing. It may be shown that, by contract made previously with B, A had promised to erect and complete the building for $10,000; that he had not fully completed it though paid the whole price. This evidence is admissible to show that there is no consideration for B's new promise, since A is promising no more than he is bound by his original contract to perform. [2 Restatement Contracts, 2d, § 214, p 134, illustration 5.]

Decisions of this Court are fully in accord with the principle that parol evidence is admissible to show that no consideration was received. "Parol evidence is always admissible to show that a contract, although, apparently valid, has nothing to support it,"[62] that no consideration was paid, and thus there was a "failure of consideration."[63]

Application of the principle that the parol evidence rule does not bar showing nonpayment/failure of consideration is not precluded in the instant case because the "plaintiff is not claiming that she did not receive *any money* . . . ."[64] Stefanac sought to introduce evidence that the money she received was already owed her by Cranbrook. Such evidence would tend to show that there was no consideration paid to her and, in that sense, a failure of consideration. Since evidence of nonpayment/failure of consideration is always admissible, reading *Leahan* as barring such evidence is incorrect.

V

Tender of consideration, although a precondition to an "action at law," is *not* a precondition to

---

See also *Baker v Chicago Fire & Burglary Detection, Inc,* n 39 *supra.*

[62] *Jennison v Stone,* 33 Mich 99, 101 (1875).

[63] *Maltz v Fletcher,* 52 Mich 484; 18 NW 228 (1884).

*Hagan v Moch,* 249 Mich 511, 517; 229 NW 629 (1930) ("[A]nd though the lease recites a consideration, the receipt of which is confessed and acknowledged by the lease, the true consideration, or want of consideration, may be shown by parol."), *Bd of Control of Eastern Michigan University v Burgess,* 45 Mich App 183, 185-186; 206 NW2d 256 (1973) ("A written acknowledgment of receipt of consideration merely creates a rebuttable presumption that consideration has, in fact, passed. Neither the parol evidence rule nor the doctrine of estoppel bars the presentation of evidence to contradict any such acknowledgment."). Similarly see *Madison Nat'l Bank v Lipin,* 57 Mich App 706, 721; 226 NW2d 834 (1975).

[64] *Ante,* p 172.

commencement of an action seeking equitable relief.[65] The reason for this distinction is historical, resting on the different theories of rescission at law and in equity and the respective powers of the chancellor and the courts of common law.

The chancellor had the power to cancel or rescind a contract. A person could, therefore, bring an action *seeking cancellation* of a contract or release, as distinguished from an action claiming that the contract or release *had been rescinded.* This Court said:

> It is said that plaintiff neither restored nor offered to restore to defendant the property received before seeking rescission. Neither was necessary. *A bill in equity praying rescission proceeds on the theory that there has been no rescission, not on the theory that rescission has already been accomplished.* [*Witte v Hobolth,* 224 Mich 286, 290; 195 NW 82 (1923). Emphasis added.][66]

[65] 11A Callaghan's Michigan Pleading & Practice, § 85.22, p 77. See *Maurer v Iden,* 242 Mich 568, 571; 219 NW 655 (1928) ("[w]hile restoration or a tender of restoration is a prerequisite to recovery in a suit at law on the ground of rescission, it is not a condition precedent in this type of case, where cancellation or rescission is sought by bill in equity"), and *Mettetal v Hall,* 288 Mich 200, 204; 284 NW 698 (1939) ("[r]estoration or tender before suit is wholly superfluous as a prerequisite to a suit in equity for rescission or cancellation").

Similarly see *Beedle v Crane,* 91 Mich 429, 432; 51 NW 1070 (1892), *Jandorf v Patterson,* 90 Mich 40; 51 NW 352 (1892), *Lightner v Karnatz,* 258 Mich 74; 241 NW 841 (1932), *Barke v Grand Mobile Homes Sales,* 6 Mich App 386; 149 NW2d 236 (1967), *Brown v Kelly,* 252 Mich 540; 233 NW 408 (1930), *Frenzel v Hayes,* 242 Mich 631; 219 NW 740 (1928), and *Anderson v Nelson, Olson & Nelson,* 248 Mich 160; 226 NW 830 (1929).

[66] The different theories of law and equity regarding rescission make it unnecessary for equity to adopt the requirement of law that the consideration received by the defrauded party must be returned or tendered before the action can be begun. In equity, the contract is not terminated by the act of the party but by the decree of the court or by acts under the decree, so that it is only necessary that the decree secure to the defendant the return of the consideration received by the plaintiff. [McClintock, Equity (2d ed), ch 6, § 86, p 231.]

The chancellor could guard against unjust enrichment of the rescinding party by conditioning a decree of rescission on the rescinding party's return of consideration received:

> A tender of restitution is not a condition precedent to a suit for rescission in equity, since the decree can be conditioned on the making of restitution. [*De Blouw v Ramm & Co*, 284 Mich 589, 595-596; 279 NW 919 (1938).][67]

An action at law, by contrast, proceeded on the

[67] In accord is *Chaffee v Raymond*, 241 Mich 392, 394-395; 217 NW 22 (1928). ("In an action at law, based on rescission, a tender is a prerequisite. [Citations omitted.] In equity, however, the rule is not so rigid, for there the bill must make profert of return of what has been received and the decree will place the parties in statu quo, as far as possible. We must hold that a bill to obtain rescission and place the parties in statu quo will not, as a matter of law, be dismissed for want of a tender before suit.")

> It was recognized as unjust to permit the plaintiff to get his money back and also to keep the property. This result might ensue if the remedy was awarded even though no tender had been made, because the courts of common law saw no remedy by which to compel a reconveyance by the plaintiff. It was otherwise in equity, since the Chancellor could make his decree of restitution expressly conditional on reconveyance and could also enter and specifically enforce an order for the plaintiff to reconvey. [5 Corbin, Contracts, ch 61, § 1116, p 626.]

> It is to be observed that when suit is brought in equity to rescind a transaction no prior tender is necessary, since the decree itself effects the rescission and may be made conditional upon the return of any consideration that has been received. [Havighurst, *Problems concerning settlement agreements*, 53 NW U L R 283, 311 (1958).]

Cases in other jurisdictions holding that tender is not a prerequisite to an action in equity because the court's decree may require surrender of benefits received by the rescinding party as a condition to rescission and protect the interests of the other party include: *Knappen v Freeman*, 47 Minn 491; 50 NW 533 (1891); *Early v Martin*, 331 Ill App 55; 72 NE2d 562, 565 (1947); *Peaslee v Pedco, Inc*, 414 A2d 1206, 1209 (Me, 1980); *Minneapolis, St P & S S M R Co v Chisholm*, 55 Minn 374; 57 NW 63 (1893); *Lion Oil Refining Co v Albritton*, 21 F2d 280, 281-282 (CA 8, 1927); *Reliable Life Ins Co v Bell*, 246 SW2d 371 (Mo App, 1952); *Bariel v Tuinstra*, 45 Wash 2d 513; 276 P2d 569 (1954). For Michigan cases see n 65 *supra*.

theory that the rescinding party had, himself, rescinded the contract. Courts of law were thought to lack the power to render conditional judgments.[68] Consequently, tender was considered a precondition to the institution of an action at law —a formality perfecting the rescinding party's rescission.[69]

A

In *Style v Greenslade,* 364 Mich 679; 112 NW2d 92 (1961), this Court, on its own initiative, *required* a plaintiff who had begun an action at law in disaffirmance of a release to amend her complaint to seek cancellation of the release in equity. The plaintiff had commenced a negligence action for personal injury sustained in an automobile accident. The defendant, as here, moved to dismiss claiming settlement and release. The plaintiff, as here, responded that the release was procured through fraudulent inducements and misrepresentations. The plaintiff demanded a jury trial of the factual issues respecting the release.[70]

---

[68] A reason commonly given for the position of the law courts was that they did not enter conditional judgments. In fact, in early history, conditional judgments were entered at law, but the practice seems to have been largely forgotten. In addition, the power of law courts to stay execution until specified conditions have been satisfied is ancient, though sparingly exercised. [1 Palmer, Restitution, § 3.11, pp 295-296.]

[69] The conception developed in the law courts was that the plaintiff rescinded by his own act and then based his case on a rescission that had been perfected before the action was commenced. In order to perfect the rescission he must return or attempt to return an asset received which was capable of return in specie. If he failed to do so, courts regularly held that the action should be dismissed. [*Id.,* p 295.]

[70] The trial court ordered a jury trial of those factual issues separate from the trial of the personal injury action. The plaintiff appealed, claiming that the entire matter should be determined in one trial by one jury.

This Court, a few months before the abolition of the distinction between law and equity,[71] held that the plaintiff, seeking to avoid a release, should have proceeded in a chancery action, and remanded the case to the circuit court, enjoining further proceedings, "until plaintiff may bring and have determined an appropriate chancery action in accord herewith":[72]

> If the release is upheld in the chancery proceeding, that should end the matter. If the release is held invalid, plaintiff may then proceed with her law action involving questions of negligence and damages. [*Id.*]

From the records and briefs, it is clear that remand to the circuit court with leave to amend was a disposition raised by this Court on its own initiative.[73]

---

See n 75 for a discussion of whether the disposition by this Court in *Style* was consistent with the right to trial by jury.

[71] The Court was deeply involved in the task, extending over many years, of revising the court rules and proposing revisions of the judicature act adopted and enacted in 1961. The Court surely was aware that the law/equity distinction was passé. See *ante*, pp 169-170, n 16.

[72] *Style, supra,* p 683.
Analogizing to arbitration cases limiting attack to direct action in equity, the Court said:

> That was the method pursued with respect to a settlement and release in *Denton v Utley,* 350 Mich 332 [86 NW2d 537 (1957)]. In *Hartford Accident & Indemnity Co v Norris,* 363 Mich 279 [109 NW2d 790 (1961)], the same procedure was followed and in this Court's opinion *Denton v Utley, supra,* was cited as controlling. [*Id.*]

[73] Plaintiff's brief listed equitable cancellation of a release as one of the three conventional methods by which a party may seek relief from a contract. Nonetheless, it appears that it was the Court that proposed the disposition of remand with leave to amend to seek equitable relief in *Style.*
See also *Williams v Metoyer,* 46 Mich App 573, 574; 208 NW2d 653 (1973):

In *Style,* this Court thus held that the "law" action should be held in abeyance while plaintiff amended her complaint to add an equitable claim for cancellation of the release.[74] The only differences between *Style* and the instant case are that *Style* was a personal injury action, not an action claiming wrongful discharge, and that this Court in that case was willing to permit an amendment of the complaint.

B

The same generosity of spirit that inspires the Court to permit Cranbrook to plead nontender more than a year after Stefanac had commenced this action should move it to allow Stefanac to amend her complaint to seek cancellation of the release on the ground of fraud or duress.

Stefanac did not, indeed, seek cancellation of the release in a separate action before commencing this action, or as a separate count in this action. Nor has she contended that this Court should apply in the instant case the rule developed in courts of equity that tender is not required where

*At the suggestion of the trial court* defendant's motion was held in abeyance pending a determination by a court of equity as to whether or not defendant should be barred from asserting the defense of release. [Emphasis added.]

[74] The validity of a release has been decided in an equitable action in many cases. *Denton v Utley,* 350 Mich 332; 86 NW2d 537 (1957), *Hall v Strom Construction Co,* 368 Mich 253, 261; 118 NW2d 281 (1962), *Van Avery v Seiter,* 13 Mich App 88, 93; 163 NW2d 643 (1968), *Ryan v Alexy,* 373 Mich 50; 127 NW2d 845 (1964), *Flanagan v Harder,* 270 Mich 288; 258 NW 633 (1935), *Bartrand v Chesapeake & Ohio R Co,* 87 Mich App 466; 274 NW2d 822 (1978), *Farwell v Neal,* 40 Mich App 351; 198 NW2d 801 (1972), *Ware v Geismar,* 8 Mich App 627; 155 NW2d 257 (1967), and *Chuby v General Motors Corp,* 69 Mich App 563; 245 NW2d 134 (1976).

Side by side with the cases where rescission was sought in equity, there is another line of cases in which the action was brought and tried at law. The majority cites several of the cases in this other line of authority. See *ante,* pp 163-164.

an action for cancellation of a release is commenced in equity.

I could nevertheless join in such a disposition of this case. Such a disposition is precedentially supported by this Court's decision in *Style* where the Court acted on its own initiative. Alternatively, this Court could appropriately require further briefing of whether the *Style* disposition—remanding to add a count seeking cancellation and trial by the court[75]—should be ordered in this case.

[75] If Stefanac had sought, either in a separate action or in a separate count in this action to cancel the release, the factual issues respecting cancellation would probably have been tried before the court without a jury. See *Chamberlain v Eddy*, 154 Mich 593, 604; 118 NW 499 (1908); *Head v Benjamin Rich Realty Co*, 55 Mich App 348, 354; 222 NW2d 237 (1974).

Courts of law and equity were said to have concurrent jurisdiction in cases of fraud where the relief prayed for is especially equitable. *Marshall v Ullmann*, 335 Mich 66, 72; 55 NW2d 731 (1952).

Equity had jurisdiction where complete protection required the cancellation of written instruments or the rescission of a transaction. *Haylor v Grigg-Hanna Lumber & Box Co*, 287 Mich 127, 133; 283 NW 1 (1938).

Justice BLACK, writing for a divided court in *Romero v King*, 368 Mich 45, 55; 117 NW2d 119 (1962), opined that *Style* was due for "scrutinous re-examination" in light of the United States Supreme Court decisions in *Beacon Theatres v Westover*, 359 US 500, 510-511; 79 S Ct 948; 3 L Ed 2d 988 (1959), and *Dairy Queen, Inc v Wood*, 369 US 469, 472; 82 S Ct 894; 8 L Ed 2d 44 (1962).

*Beacon Theatres* and *Dairy Queen* extended the right to jury trial. Those cases held that where legal and equitable issues are intermixed in a single lawsuit, the right to a jury trial controls. Therefore, any issues common to both claims are first tried to a jury before the court decides any purely equitable issues.

Michigan's adoption of the Federal Rules of Civil Procedure together with the acceptance by most states of the view that a defense grounded on fraud and arising in the context of a common-law action is triable to the jury (cf. *Bowie v Sorrell*, 209 F2d 49 [CA 4, 1953]; *Canning v Star Publishing Co*, 138 F Supp 843 [D Del, 1956]), led commentators (see Fleming, *Right to a jury trial in civil actions,* 72 Yale L J 655, 693 (1963), and 2 Honigman & Hawkins, Michigan Court Rules Annotated [2d ed], p 422) to predict the demise of *Style* insofar as it contemplated trial of factual issues to the court.

*Beacon Theatres* and *Dairy Queen* interpret the right to trial by jury under the federal constitution and are not binding interpretations of the Michigan constitutional right to jury trial. Const 1963, art 1, § 14. In *Abner A Wolf, Inc v Walch*, 385 Mich 253, 265-266; 188 NW2d 544 (1971), Justice BLACK wrote:

VI

The Court is so smitten with the importance of tender, that, without briefing, argument, or citation of authority, it appears to substitute a new gatekeeping rationale—protection of "settlements" —for the well- and long-established avoidance-of-unjust-enrichment rationale of the tender requirement:

[T]he tender rule set forth here requires that whenever a legal claim is raised in contravention of a settlement agreement, *even if joined with an equitable claim,* tender is a precondition. *Anything less would nullify the purpose of the tender rule.* [*Ante,* p 170. Emphasis added.]

The foregoing formulation expresses the Court's concern that the rule requiring tender before com-

---

In Michigan, unlike the Federal practice with its involvement of specific acts of Congress and the Seventh Amendment, we determine properly under our Constitution the extent of equity's jurisdiction, duties and powers. Our practice is governed by the rule set forth in *Vaughan v Wayne Circuit Judge,* 153 Mich 478, 480 [116 NW 1086] (1908), followed in *F M Sibley Lumber Co v Wayne Circuit Judge,* 243 Mich 483, 485 [220 NW 146] (1928). It calls up the application of sound judicial discretion with no constitutional right of sequence of trial or jury trial involved; whenever the jurisdiction of equity is unquestioned, as here in *Wolf.*

It may be that Michigan does not share the federal preference for jury trials voiced in *Beacon Theatres* and *Dairy Queen.* In *Brown v Kalamazoo Circuit Judge,* 75 Mich 274, 284; 42 NW 827 (1889), this Court rejected as unconstitutional a statute that would have extended the right to jury trial to actions traditionally equitable, and said that "[t]he right to have equity controversies dealt with by equitable methods is as sacred as the right of trial by jury." In Michigan, thus, it may be that there is a constitutional right to a *nonjury* trial on issues of fact in actions sounding in equity. See note, *The right to non-jury trial,* 74 Harv L R 1176, 1190 (1961), and 2 Honigman & Hawkins, *supra,* pp 449-450.

Finally, as was noted in *Farwell v Neal,* 40 Mich App 351, 353; 198 NW2d 801 (1972), "[t]he *Style* decision . . . has yet to become the subject of 'scrutinous re-examination' by our Supreme Court . . . ."

mencement of an action in *disaffirmance* of a release might be undermined by commencing an action seeking, in one count, rescission of the release (tender not being required), and, in another, a determination on the merits of an underlying claim for wrongful discharge.

The statement in the Court's formulation, "[a]nything less would nullify the *purpose* of the tender rule," is not followed with any discussion of the purpose of the tender rule. The only purpose heretofore recognized by this or any other court is avoidance of the unjust enrichment that would result if the plaintiff could keep separate consideration paid for a release after it is set aside.

Many leading authorities agree that, after the abolition of the procedural distinction between law and equity so that a trial court can, whatever the form of action or relief sought, indisputably enter a conditional judgment, there is no need to require tender as a precondition to commencing an action brought in disaffirmance of a release to guard against the unjust enrichment of the plaintiff.

No authority was found resurrecting tender, on a gatekeeping rationale, as an absolute precondition to suit. It appears that Michigan, if it persists in the obiter dictum announced by the majority today without briefing, argument, or citation of authority, will be alone in requiring tender on a gatekeeping rationale.

Modern procedural reforms,[76] in conjunction

---

[76] The distinctions between law and equity proceedings shall, as far as practicable, be abolished. [Const 1963, art 6, § 5.]

Honigman, recalling personal participation in the meetings and deliberations of the Joint Committee on Civil Procedure in 1958-1962, explained in the Committee Notes to Rule 12 (the rule providing that "[t]here shall be 1 form of action known as a 'Civil Action' "):

These rules are written to abolish, as far as possible, the

with the consolidation in one court of jurisdiction
of both equitable and law claims, eliminate the
necessity of tender as a prerequisite to commence-
ment of an action seeking *to obtain rescission.*
Under unified proceedings, a court may enter a
judgment conditioning rescission on the return of
consideration received by the plaintiff, thus effec-
tuating the purpose of the tender rule, the avoid-
ance of unjust enrichment of the rescinding party:

> In equity, his [the rescinding party's] failure to
> make such an offer [to return what he has re-
> ceived] before commencing a suit for rescission did
> not preclude relief. The decree could be made
> conditional on an offer. At law, however, an offer
> was traditionally regarded as a condition of the
> right to commence an action based on rescission.
> *The merger of law and equity and modern proce-
> dural reforms have made this distinction undesira-
> ble, and the rule stated in this Section reflects the
> increasing criticism of the rule at law. If the court
> has the power to assure the required return in
> connection with the relief that it grants, it is not
> necessary that there have been a prior return or*

*procedural* distinctions between law and equity. No attempt has
been made to alter the substantive differences between law and
equity. However, Professor Pomeroy observed, in the preface to
the first edition of Pomeroy's Equity Jurisprudence (1881), that
under such unified procedure "The tendency . . . has plainly
and steadily been towards the giving an undue prominence and
superiority to purely legal rules, and the ignoring, forgetting,
or suppression of equitable notions." *The adoption of these
rules is not to be construed as approving of this tendency. On
the contrary, Professor Pomeroy's words are to be taken as a
warning so that we may avoid the consequences he describes.
Only procedural distinctions are abolished or minimized by this
set of rules.* [1 Honigman & Hawkins, Michigan Court Rules
Annotated (2d ed), ch 1, Rule 12 Committee Notes, p 9. Empha-
sis added.]

Rule 12 is now embodied in MCR 2.101(A).
  See also 1 Moore, Federal Practice, Rules Pamphlet, 2.3[2], pp 12-13
for comments on the analogous federal rule.

*offer to return.* [3 Restatement Contracts, 2d, § 384, comment b, p 245.[77] Emphasis added.]

Textwriters have said, and courts in other jurisdictions have held, that the requirement of tender before commencement of an action no longer has validity:

> *No reason is apparent for this [tender] requirement, since courts under the codes have the same power as the chancellor possessed to render a*

[77] Judicial authority to enter conditional judgments was deemed an exception to the general tender requirement for restitution in the Restatement Contracts, 2d, and the Restatement Restitution:

> (1) Except as stated in Subsection (2), a party will not be granted restitution unless
>
> (a) he returns or offers to return, conditional on restitution, any interest in property that he has received in exchange in substantially as good condition as when it was received by him, or
>
> (b) *the court can assure such return in connection with the relief granted.* [3 Restatement Contracts, 2d, § 384, p 244.]

> The offer of restitution, essential in the ordinary actions at law, *is required only where a conditional decree cannot be rendered; in equity, however, and in proceedings at law in which by statute or otherwise a conditional decree can be rendered, there need be no offer to restore antecedent to the proceedings. The mutual restoration can be accomplished by the decree.* [Restatement Restitution, § 65, comment d, p 260. Emphasis added.]

See also *Wahsner, supra,* p 999, n 11. In *Wahsner,* on facts similar to those in the instant case (see n 36), the plaintiffs brought suit against their employers for bad-faith termination. The plaintiffs did not return the consideration they received for releasing their claims. The court denied the defendants' motion for summary judgment, explaining,

> This section [§ 384 of the Restatement Contracts, 2d] provides that a party is not required to return benefits received in order to be granted restitution if "the court can assure such return in connection with the relief granted." § 384(1)(b). Thus, . . . Wahsner and Novin may proceed if they return to defendants an amount equal to the benefits they received.

*judgment which can be made conditional upon a
return of the consideration, and some courts which
have acquired the power to render a conditional
judgment either by statute or otherwise, apply the
equitable procedure in legal actions.* [McClintock,
Equity (2d ed), ch 6, § 86, pp 231-232. Emphasis
added.]

The rule of the law courts has retained an
undeserved vitality. *Today a court should hold
that the equity practice applies to all actions,
without regard to their historical origins in law or
equity.* Certainly this is fully justified where the
procedural distinctions between law and equity
have been abolished. In a court of general jurisdic-
tion, having both law and equity powers, if the
court can work out the problem of mutual restitu-
tion in one action it can do so in another, and it
should make no difference that in an earlier pe-
riod one was a suit in equity while the other was
an action at law. [1 Palmer, Restitution, § 3.11, p
297. Emphasis added.]

*It is gross error to refuse such a remedy [restitu-
tion] today, if it is within the powers of the court
and accords with existing procedure, merely be-
cause some earlier court with more limited powers
and less flexible procedure refused to grant it.* [5
Corbin, Contracts, ch 61, § 1116, p 626. Emphasis
added.][78]

---

[78] The power of the courts to make the remedy fit the special
case is not extinct. Under modern statutory reorganizations
and codes of procedure, that power is not diminished. Instead,
*under a very flexible procedure, a single court may now have
all the powers of all the earlier complex systems of courts and
may have available all the remedies of common law and equity,
to be used separately or in combination. The decree of the
court, therefore, should be moulded to suit the facts of each
case as justice may require.* [3 Corbin, Contracts, ch 29, § 613,
pp 709-710 (discussing legal and equitable remedies for mis-
take). Emphasis added.]

Law and equity have long been merged in Washington; they now are merged in the Federal courts. The court can pass upon the validity of the release and upon the validity of the cause of action, and, if it finds for plaintiff, offset the consideration against the judgment, all in one action. [*Ted Price Construction Co v Cascade Natural Gas Corp*, 307 F2d 741, 743 (CA 9, 1962).][79]

I suggest that the obiter dictum requiring tender where a count seeking equitable relief, cancellation of a release, is joined with a "law" count

In modern courts the procedure has much more in common with that of the chancellors than with that of the common law judges; and the *rules of substantive law, including those determining the remedies that are available and the circumstances under which they will be granted, are the rules of equity wherever they differ from those of the common law, unless they are new legislative enactments.* [5 Corbin, Contracts, § 1103, p 552 (discussing the effect of the amalgamation of equity and common law on the remedy of restitution). Emphasis added.]

[79] But see *ETC Corp v Title Guarantee & Trust Co*, 271 NY 124; 2 NE2d 284 (1936), reh den 271 NY 659; 3 NE2d 471 (1936), where the court held that tender was required in an action at law even though the legislature had abolished the distinction between law and equity and substituted the present uniform procedure.

Professor Corbin commented:

The court was itself as much a court of "equity" as a court of "law"; and it was empowered and in duty bound to award restitution if the facts shown were sufficient to justify such a decree "in equity," even though not sufficient "at common law." All that was necessary was for the court to require the defendant to return the money on condition that the certificates were delivered into court and to adjust court cost as might be equitable.

Instead, the long litigation through all the courts was thrown away; and the greatly injured plaintiff, after great expense, was required to start all over again by making a physical tender that would be refused, or by bringing a new suit that he would describe as his "bill in equity" on exactly the same facts as before and ask for a conditional decree such as former chancellor Kent would have granted. [5 Corbin, Contracts, ch 61, § 1103, p 555, n 2.5.]

should be reconsidered in light of the foregoing statements of textwriters and courts.

## VII

I agree with the majority that the result for which the majority writes is "seemingly harsh"[80]—I suggest "unnecessarily harsh." The purpose of the tender rule is not, again, to protect a release obtained by fraud or duress, but rather to prevent the plaintiff, *if* the release is set aside, from retaining money paid to the plaintiff to resolve the underlying claims.

I further agree with the majority that "[t]he plaintiff is not entitled to retain the benefit of an agreement and at the same time bring[81] suit in contravention of the agreement."[82] A plaintiff should not be permitted to proceed with an action in contravention of a release unless he can first convince the court to set aside the release. If he does, he should then be required to return all consideration that the court finds was paid for the release of the underlying claims.

It would not, therefore, "undermine the very rule announced by this Court in *Carey*" if a plaintiff is permitted to defer tendering consideration until after it is decided whether the release will be set aside. *Carey* was not an action in equity to set aside a release, but rather an action at law in disaffirmance of the release. We all agree that a plaintiff should not be permitted to proceed in an action in disaffirmance of a release unless and until he tenders consideration paid for the release of the underlying claims.

Recognizing, now that the procedural distinction

[80] See n 16.

[81] I would substitute "proceed with" for "bring."

[82] See n 16.

between law and equity has been abolished, that
tender before suit is no longer a precondition to
*commencement* of an action would not mean that
a plaintiff may put the defendant to the expense of
defending against the plaintiff's claims on the
merits of the underlying controversy before re-
turning consideration in fact paid to avoid incur-
ring that very expense.

A person who has signed a release who wishes to
commence an action in disaffirmance of the release
should be required to include in his complaint a
separate count seeking to set aside the release.
The trial court should not permit the plaintiff to
proceed on counts seeking damages or other relief
on plaintiff's underlying claims unless the plaintiff
prevails in his effort to set aside the release.[83]

Disputed issues of fact and law concerning the
validity of a release should ordinarily be resolved
before the plaintiff is permitted, over the objection
of the defendant, to depose witnesses or otherwise
obtain discovery respecting the underlying claims
asserted by the plaintiff in the "law" counts of the
complaint. If the release is found to be valid, the
plaintiff's action would be dismissed and the de-
fendant would have prevailed before any discovery
on the meritorious questions in the underlying
controversy. If, on the other hand, the release is
found to be invalid, the plaintiff should be re-
quired to pay to the defendant an amount equal to
all consideration the court finds was in fact paid to
the plaintiff to avoid litigating on the merits the
underlying claims.[84] The defendant, thus, would
not be put to the expense of defending against

[83] See *Style v Greenslade, supra,* discussed in n 70 and accompany-
ing text.

[84] That is, except such amount as the court determines defendant
owed the plaintiff before the terms of the release were negotiated,
agreed upon, and the release was signed.

plaintiff's underlying claims unless the release is set aside, and consideration paid therefor has been returned.[85]

## VIII

Stefanac's claims of wrongful discharge, fraud and duress in obtaining her signature on a release and for two weeks' additional vacation pay may be wholly without merit. She may not have been strong-armed into signing the release. Cranbrook may have acted with the utmost rectitude and justification. If so, a court would presumably so adjudicate were there a hearing on the merits.

To be sure, there is considerable unjustified, costly litigation brought by disgruntled employees who should have been discharged by forbearing and indulgent employers long before they were in fact discharged. Unjustified litigation is a pall, manipulated by far too many plaintiffs and defendants and their advocates, that both hampers the administration of justice and undermines public confidence in the courts. It is a pall that preceded the burgeoning wrongful discharge litigation industry. The court rules provide remedies therefor that some courts are implementing by assessing costs where warranted.

[85] I recognize that a person suing for wrongful discharge may claim that his damages arose at the moment he was discharged—in the instant case, when Stefanac was discharged a few hours before the release was signed. It would therefore be necessary to distinguish between damages that accrued after the discharge and amounts that accrued for services rendered before the discharge. Amounts paid in respect to the latter, although recited in the release as consideration, need not be returned if the release is set aside unless the Court (but see n 74) finds that the amount was in fact paid to the plaintiff in respect to an underlying claim. Amounts paid in respect to damages that accrued after the discharge or an underlying claim must, however, be returned if the release is set aside before the defendant should be required to defend on the merits of the underlying controversy.

The particularly vocal complaints of employers and their advocates do not justify a new gatekeeping rationale for the tender requirement, now that its historical justification, a law court's inability to enter a conditional judgment, no longer has any validity.

The question is important not only in wrongful discharge cases, but also in personal injury cases and in cases involving contracts other than a release claimed to have been obtained by fraud, duress, or other overreaching entitling a plaintiff to rescind. This Court has the duty to think beyond the case at hand, and to the rule of law that it is expounding not only for employer/employee cases but for all civil litigation.

## IX

Contracts to relinquish the enforcement of legal rights warrant at least as much judicial surveillance as other contracts. This Court said in *Denton v Utley*, 350 Mich 332, 333, 339; 86 NW2d 537 (1957):

> We are not saying that all releases are vulnerable. What we are saying is that releases have no particular immunity of their own to attack on the ground of mistake or fraud. There is no form of words, there is no formula, no instrument, no transaction, that rises above the chancellor's scrutiny or resists his intervention. "Fiat justitia ruat coelum."
>
> * * *
>
> "If fraud or mutual mistake has induced the making of an unconscionable contract, *courts ought to be more concerned about granting relief, than desirous of clinching future wrongs by making such contracts incontestable.*" [Emphasis added.]

The constitution confides to this Court both the power and the conscience of the chancellor. This Court cannot justify, on the basis that a ceremonial tender was not made, its failure to inquire into the bona fides of the release relied on by Cranbrook.

### X

The real issue, avoided by the majority's disposition in this case, is whether the release was obtained by Cranbrook by fraud or duress.

If it were to be judicially determined, a determination which the majority's disposition precludes, that Stefanac was strong-armed into signing the release, the release should be set aside and she should be required to return the $1,042.31 before obtaining a determination on the merits of her claims of wrongful discharge unless, it were also so judicially determined, Cranbrook owes her that amount as additional vacation pay.

ARCHER, J. (*concurring in the dissent*). I agree with the basic rationale and result in Justice LEVIN's dissent. I write separately, however, to lend a slightly different perspective.

Unlike the dissent, I believe this Court's opinion in *Leahan v Stroh Brewery Co,* 420 Mich 108; 359 NW2d 524 (1984), offered a sound and consistent method through which persons perceiving themselves to be aggrieved by signed release agreements could repudiate. I further believe the rule is applicable to the case at bar. However, in my view, the *Leahan* rule in its present state is neither complete nor fair.

In instances where there is a *bona fide, good-faith* dispute regarding whether consideration recited in the "expressed language of the release

agreement" *actually* amounted to that which is
defined "consideration," the rule in *Leahan* is
unworkable. Accordingly, I agree that " 'Where,
aside from the transaction, the person seeking
restitution would be entitled to retain what the
other gave as the result of the agreement, the
transaction does not enrich him even though he
retains such things, nor does it diminish the net
assets of the other . . . .' " See *ante,* p 198, n 48,
citing Restatement Restitution, ch 2, § 65e; see
also *Carey v Levy,* 329 Mich 458, 465; 45 NW2d
352 (1951). The practical purpose of the "tender
first" rule is to ensure that the party challenging
the validity of the release form receives no unjust
enrichment in receiving monies exchanged. *Id.*

Clearly, a plaintiff who contests the sufficiency
of the consideration supporting a release agree-
ment should be allowed to withhold tender of such
alleged consideration until there is a judicial de-
termination that consideration was in fact paid. If
it is found that the consideration was paid, then
the plaintiff should be required to tender that
amount. However, if the court determines that the
amount paid to the plaintiff for the release was
already owed to the plaintiff, then the plaintiff
should be allowed to retain that amount and pro-
ceed with any legal action. See, generally, *ante,* pp
196-202, part III.

The nature and depth of the rights sacrificed at
the signing of a release or settlement agreement
are of such stature that a mere, hollow "recitation
of consideration" should not be considered as a
sufficient basis for the exchange. Indeed, the
*sufficiency* of consideration, in this context, should
be foremost in the construction, execution, and
review of the activities surrounding release and
settlement agreements. Any endeavor to balance

the equities involved in the relinquishment of
clearly defined rights demands, above all, fairness.

In my view, the majority fails in its attempt to
justify the harshness and inflexibility of the
*Leahan* "tender back" rule with its assertion that
parties contesting the fact and existence of consid-
eration in this context should, prior to instituting
an action on the propriety of their own dismissal,
bring an action for rescission of the release agree-
ment in equity. For then, the majority states, the
issue whether valid consideration supported the
agreement can be decided preceding the institution
of a wrongful discharge suit.

In my view, however, even in the case that the
validity of the release agreement is not challenged
preceding the filing of legal claims, there is no
justice in maintaining a rule that blindly demands
"tender back," even when tender, absolutely,
should not be required. See Williston, Contracts
(3d ed), § 1530, p 646; 76 CJS, Release, § 37, p 666.
It is the iron-clad feature of the rule that sits at
the center of this dispute. The "tender back" rule
simply cannot in fairness be properly applied, in
every case, unless there is, in addition to equitable
rescission, some internal method by which the
sufficiency of that which must be tendered back,
i.e., the consideration itself, can be "checked" as
well. Hence, Justice LEVIN's proposed rule, which
merely reflects the standardization of Restatement
Restitution, ch 2, § 65, comment e, provides the
fairest solution of all.

In the present case, the plaintiff was unquestion-
ably owed her earned wages, as well as four weeks
of accrued vacation pay. Thus, she was not un-
justly enriched in the receipt of these. However,
because there is a factual dispute regarding
whether additional vacation pay was owed, I be-
lieve, any amount over that which was concededly

*owed* to the plaintiff should, indeed, be tendered to the defendant within a reasonable time following the resolution of this question of fact by the trial court. Accordingly, I would urge that the plaintiff be allowed to amend her complaint to request rescission of the release agreement. See *Style v Greenslade,* 364 Mich 679; 112 NW2d 92 (1961); *McDonald v Zinn Drywall,* 134 Mich App 270, 277; 350 NW2d 864 (1984); *Carey, supra* at 466.

Lastly, I disagree with the dissent on one point. I do not believe the plaintiff was coerced into signing the release. The plaintiff's failure to question the circumstances surrounding the defendant's offer of alleged consideration reflects negligence, not on the part of the defendant, but on the part of the plaintiff. The dissent presumes that the immediacy of the defendant's request that plaintiff sign a release agreement necessarily intimated that the defendant prohibited the plaintiff from retaining an attorney. I disagree.

The implicit alleged threat, "sign now or forego your money," still carried with it the notion that the plaintiff should have been, with or without an attorney, concerned or at least hesitant about signing away her right to sue *at any price,* especially if she felt she had been wronged in her dismissal. Therefore, in my view, there was no actionable coercion in this case.