NOT RECOMMENDED FOR PUBLICATION
File Name: 18a0045n.06

**FILED**
Jan 23, 2018
DEBORAH S. HUNT, Clerk

No. 17-1600

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| ABDALLAH SALLOUM, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| HARMAN INTERNATIONAL | ) | EASTERN DISTRICT OF MICHIGAN |
| INDUSTRIES, INC., HARMAN | ) | |
| HOLDING GmbH & CO. KG, and | ) | OPINION |
| HARMAN BECKER AUTOMOTIVE | ) | |
| SYSTEMS GmbH, | ) | |
| | ) | |
| Defendants-Appellees. | ) | |
| | ) | |

Before: BATCHELDER, GILMAN, and ROGERS, Circuit Judges.

**RONALD LEE GILMAN, Circuit Judge.** Abdallah Salloum brought a claim against

Harman International Industries, Inc. and its subsidiaries, Harman Holding GmbH & Co. KG and

Harman Becker Automotive Systems GmbH (collectively, Harman), to recover an income-tax

refund allegedly due him as a former employee. The district court held that the claim was barred

by a Separation and Release of Claims Agreement (hereinafter, Separation Agreement) between

the parties that released all claims arising from matters occurring before the signing of the

agreement. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

**I. BACKGROUND**

Salloum, a citizen of the United States and a resident of Michigan, accepted employment

in 2009 as a Senior Vice President at Harman's facility in Germany, where he continued to work

until 2012. Harman and Salloum entered into an Assignment Agreement in 2009 that set forth

the terms of his employment. In addition to providing for the compensation and allowances that Harman would pay to Salloum, the Assignment Agreement contained a tax-equalization provision. The purpose of the provision was "to minimize or eliminate any positive or negative income tax differentials" that Salloum's international assignment would have on his tax burden, so that Salloum would pay approximately the same amount in income taxes that he would have paid had he been employed in the United States. To accomplish this purpose, Harman calculated Salloum's hypothetical U.S. income-tax liability based on his salary and deducted that amount from his compensation. Harman also provided, at its own expense, tax consultants to assist Salloum with filing his annual income-tax returns in both Germany and the United States.

Although the Assignment Agreement does not directly state that Harman was obligated to pay any income taxes owed to the German government in relation to Salloum's employment, that obligation was essential to accomplishing tax equalization. Salloum acknowledges as much in his brief: "Presumably, [the tax-equalization provision] meant that Harman would pay whatever taxes were due to the German taxing authority." And the parties agree that Harman did in fact make tax deposits with the German government in relation to Salloum's 2009–2012 employment in Germany.

Salloum returned to the United States following his international assignment, with the parties agreeing in 2013 that they would part ways. As a result, they entered into a Separation Agreement dated June 11, 2013. Among other terms, the Agreement provided separation benefits to Salloum, including a lump sum payment of over $300,000 as consideration for his entering into the Agreement. It also stipulated that he has "no entitlement to any additional payment or consideration."

Salloum, moreover, agreed to release "any and all claims . . . , whether known or unknown, that [he] has ever had against the Harman Group by reason of any actual or alleged act . . . up to and including the date of his execution of this Agreement." He did not, however, "waiv[e] or releas[e] rights or claims that may arise after his execution of [the Separation Agreement]." The Agreement makes clear that it "contains all the understandings and representations between [Salloum] and Harman pertaining to the subject matter [t]hereof and supersedes all prior and contemporaneous understandings, agreements, representations and warranties, both written and oral, with respect to such subject matter."

Sometime in 2014, the parties became aware that the taxes related to Salloum's 2009–2012 employment had been overpaid to the German taxing authority, so that a refund was due. Salloum contends that this occurred after he belatedly filed his German tax returns in 2014, but Harman disputes that contention, arguing instead that it realized that it had overpaid the taxes after performing an internal audit. In any event, Salloum alleges that Harman wrongfully represented to the German taxing authority that Harman was entitled to the refund, causing the German government to pay the refund of €148,619.11 to the company instead of Salloum.

Harman's alleged misappropriation prompted Salloum to bring this action to recover the income-tax refund. (Salloum also sought to recover a bonus that he was allegedly due under the Separation Agreement, but this claim was dismissed by a stipulated order from the district court and is not at issue on appeal.) Harman subsequently filed a motion to dismiss Salloum's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The district court granted the motion, concluding that Salloum's claim for recovery of the tax refund was barred by the Separation Agreement's release and by Michigan's "tender-back doctrine," the latter requiring that "a plaintiff must, in all cases where a legal claim is raised in contravention of an

agreement, tender the consideration recited in the agreement prior to or simultaneously with the filing of suit." *See Stefanac v. Cranbrook Educ. Cmty.*, 458 N.W.2d 56, 66 (Mich. 1990); *Rinke v. Auto. Moulding Co.*, 573 N.W.2d 344, 346 (Mich. Ct. App. 1997) (concluding that a plaintiff must "tender any consideration received in exchange for a release before or simultaneously with the filing of a suit that contravenes that release"). Salloum's motion for reconsideration was later denied, and this timely appeal followed.

## II. ANALYSIS

### A. Standard of review

We review de novo the district court's grant of a Rule 12(b)(6) motion to dismiss. *Ohio Pub. Emps. Ret. Sys. v. Fed. Home Loan Mortg. Corp.*, 830 F.3d 376, 382 (6th Cir. 2016). In doing so, "[w]e construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations as true, and examine whether the complaint contains 'sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."'" *Id.* at 382–83 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

### B. Scope of the release

The parties disagree about whether the tax-refund claim arose before or after they entered into the Separation Agreement. The district court acknowledged that Harman's alleged misappropriation of the tax refund occurred in 2014, but ultimately concluded that "the claims concern entitlement to tax refunds for the years 2009 through 2012, during [Salloum's] employment and while the Assignment Agreement was in effect," and "therefore arose . . . prior to the date of the execution of the Separation Agreement." Salloum disagrees, arguing that the gravamen of his complaint is that Harman "made material misrepresentations to the German taxing authority and wrongfully secured and retained the Refunds that belong to Salloum," and

that these acts were committed "long after execution of the Separation Agreement" in June 2013 and thus were not covered by the release.

Whether Salloum's tax-refund claim is barred by the release (and thus also by the tender-back doctrine) is a close question. But we need not decide whether the district court erred in concluding that Salloum's claim arose prior to the release because, even if the claim is not barred by the release, Salloum is not entitled to the tax refund under either the Assignment Agreement or the Separation Agreement. And the tender-back doctrine does not apply to Salloum's claim unless the claim is barred by the release, so we also need not decide whether the court was correct in identifying the tender-back doctrine as an additional basis for dismissing Salloum's claim.

**C.      The Separation Agreement did not nullify the Assignment Agreement.**

Salloum's claim to the tax refund hinges entirely on his contention that the Assignment Agreement "was terminated and rendered a nullity, void and of no further force and effect" by the signing of the Separation Agreement. He in fact concedes that, under the terms of the tax-equalization provision of the Assignment Agreement, Harman would be entitled to any tax refund due from the German government. The key question we must consider, then, is whether the tax-equalization provision of the Assignment Agreement remained in effect following the Separation Agreement.

Again, the Separation Agreement makes clear that it "contains all the understandings and representations between [Salloum] and Harman *pertaining to the subject matter [t]hereof* and supersedes all prior and contemporaneous understandings, agreements, representations and warranties, both written and oral, *with respect to such subject matter*." (Emphasis added.) The fatal flaw in Salloum's argument is that it ignores the limiting language, which states that all

other agreements and understandings are superseded *only with respect to the specific subject matter addressed by the Separation Agreement*.

So what is the "subject matter" of the Separation Agreement? The Agreement focuses on Salloum's separation from Harman and sets out the terms of that separation. Specifically, it provides the final date of employment; a release of potential claims predating the Separation Agreement; obligations related to confidentiality, nondisparagement, and nonsolicitation of employees; and benefits to be afforded to Salloum as consideration for entering into the Agreement. It also lays out remedies for a breach of its terms and addresses any potential modification, waiver, or assignment of its provisions.

The Separation Agreement's discussion of compensation owed to Salloum for his work at Harman is limited to Salloum's acknowledgement that he "has been properly paid for all hours worked for Harman, and that all bonuses and other compensation due to him ha[ve] been paid," with the exception of his final payroll check, his "incentive cash compensation" earned in fiscal year 2013, and other vested benefits under Harman's employee-benefits plans. This leaves the German tax refund as undoubtedly belonging to Harman, which paid the taxes in the first instance. Payment of the tax refund to Salloum—who did not contribute to the German tax payments—would be further employment-related compensation to which Salloum explicitly waived claim in the Separation Agreement.

Critically, the Separation Agreement does not discuss tax equalization. And although it notes that Salloum will be responsible for any taxes related to the consideration he received for entering into the Separation Agreement, it makes no reference to taxes related to his 2009–2012 employment in Germany. The Separation Agreement thus does not supersede the Assignment

Agreement with respect to the tax-equalization provision because the Separation Agreement does not address the "specific subject matter" of the parties' tax-equalization agreement.

And because the Separation Agreement did not supersede the Assignment Agreement's tax-equalization provision, the Assignment Agreement controls which party is entitled to the tax refund. That party is Harman. As noted above, Salloum concedes that "while the Assignment Agreement was in effect, Harman was contractually obligated to handle Salloum's German tax burden. Harman owed any obligations that were due and was entitled to any benefits that might exist." Salloum further concedes that Harman in fact paid all taxes owed to the German government in relation to his international assignment. Since the claim at issue on appeal relies entirely on Salloum's erroneous contention that the Assignment Agreement was voided by the Separation Agreement, the claim is without merit.

### III. CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.